Raymond Whitall
G43090 A5-105
P.O. Box 1050
Soledad CA 93960

Plaintiff, pro se

*FILED*
*RECEIVED*

MAR 29 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  Raymond Richard Whitall | |
| 12  Plaintiff, pro se | Case No. 18-cv-1376-CRB |
| 13          v | |
| 14  S.D. Gutierrez, State of California, | FIRST AMENDED COMPLAINT |
| California Department of Corrections | UNDER THE CIVIL RIGHTS |
| and Rehabilitation,  E. Perez, | ACT, 42 U.S.C. §1983, and |
| 15  Joseph Celaya, J. Aboytes, | 42 U.S.C. §§1985(3), 1986, |
| J. Caballero, J. Ramirez, O. Valles, | and 29 U.S.C. §794. |
| 16  M. Gudino, F. Vasquez, H. Ayala, | |
| R.L. Martinez, R. Poody, W. Muniz, | |
| 17  A. Velasquez, D. Shaltry, H. Jew, | |
| R. Quintero, R. Magana, A. Villafuerte, | |
| 18  A. Camacho, Glenn Shiple, Correctional | |
| Sergeant McClellan, Correctional | |
| 19  Officer Ramirez, DOE1-Associate Warden- | |
| A-Facility, DOE2-UOF Coordinator-SVSP, | |
| 20  DOE3-Unknown/Unidentified Correctional | |
| Sergeant, DOES 4-10, inclusive, | |
| 21  Defendants | |

22

23  I. EXHAUSTION OF ADMINISTRATIVE REMEDIES.

24          1. Plaintiff is confined at the Salinas Valley State Prison

First Amended Complaint
18-cv-1376-CRB

1  wherein there is a grievance procedure.  Plaintiff has presented
2  the facts in his complaint so as to put Defendants on notice
3  as to the issues.  At every level of review Defendants did not
4  provide Plaintiff with relief, and at the final available level
5  of review Plaintiff's grievances were denied.  Plaintiff has
6  exhausted his administrative remedies, including to the extent
7  of submitting a monetary claim to the California Government
8  Claims Board of which no relief was provided.

9

10  II. PARTIES.

11      A. PLAINTIFF

12      2. Raymond Whitall, G43090, P.O. Box 1050, Soledad
13  CA 93960

14      B. DEFENDANTS

15      3. Defendants State of California and the California De-
16  partment of Corrections and Rehabilitation (State, CDCR, re-
17  spectively) is the government of the state in which the facts
18  of this matter occurred, and the CDCR is a State of California
19  agency which is responsible for the operation of the Salinas
20  Valley State Prison (SVSP) in which the facts of this matter
21  occurred.  Their addresses are 1515 S St., Sacramento CA 95814.
22      4. To the best of his knowledge Plaintiff believes that
23  all other Defendants have their business address at the SVSP,
24  located at 31625 Hwy 101 S., P.O. Box 1020, Soledad CA 93960.
25      5. Defendant S.D. GUTIERREZ is a Correctional Sergeant
26  at SVSP, and was so at all times mentioned herein.

1      6. Defendant E. Perez is and, Plaintiff believes, was at
2  all times mentioned herein a Correctional Sergeant at SVSP.

3      7. Defendant Joseph Celaya, Plaintiff believes, is and
4  was at all times mentioned herein a Correctional Lieutenant
5  at SVSP.

6      8. Defendant J. Aboytes is and was at all times mentioned
7  herein a Correctional Officer at SVSP.

8      9. Defendant J. Caballero is and was at all times mentioned
9  herein a Correctional Officer at SVSP.

10     10. Defendant J. Ramirez (Badge no. 64456) is and was at
11  all times mentioned herein a Correctional Officer at SVSP.

12     11. Defendant O. Valles is and was at all times mentioned
13  herein a Correctional Officer at SVSP.

14     12. Defendant M. Gudino is and was at all times mentioned
15  herein a Correctional Officer at SVSP.

16     13. Defendant F. Vasquez (Badge no. 82087) is and was at
17  all times mentioned herein a Correctional Officer at SVSP except
18  for--at least--the period between June 30, 2017 and October 5,
19  2017, when Defendant Vasquez was, Plaintiff is informed and
20  thereon believes, on suspension from his duties with the CDCR.

21     14. Defendant H. Ayala is and was at all times mentioned
22  herein a Correctional Officer at SVSP.

23     15. Defendant R.L. Martinez is and was at all times men-
24  tioned herein a Correctional Lieutenant at SVSP.

25     16. Defendant R. Poody is and was at all times mentioned
26  herein a Correctional Lieutenant at SVSP.

1    <u>17.</u> Defendant W. Muniz is and was at all times mentioned

2    herein the Warden at SVSP.

3    <u>18.</u> Defendant A. Velasquez is and was at all times mentioned

4    herein a Correctional Officer at SVSP.

5    <u>19.</u> D. Shaltry is and was at all times mentioned herein a

6    Correctional Sergeant at SVSP, and is a Defendant in this matter.

7    <u>20.</u> Defendant H. Jew is and was at all times mentioned here-

8    in a Licensed Clinical Social Worker (LCSW) at SVSP.

9    <u>21.</u> Defendant R. Quintero is and was at all times mentioned

10   herein a Correctional Counselor II/Correctional Captain, Acting,

11   at SVSP.

12   <u>22.</u> Defendant R. Magana is and was at all times mentioned

13   herein a Correctional Officer at SVSP.

14   <u>23.</u> Defendant A. Villafuerte is and was at all times men-

15   tioned herein a Correctional Officer at SVSP.

16   <u>24.</u> Defendant A. Camacho is and was at all times mentioned

17   herein a Psychiatric Technician (PT) at SVSP.

18   <u>25.</u> Defendant Glenn Shiple is and was at all times mentioned

19   herein a Registered Nurse (RN) at SVSP, to the best of Plaintiff's

20   knowledge.

21   <u>26.</u> Defendant Correctional Sergeant McClellan is and was

22   at all times mentioned herein a Correctional Sergeant at SVSP.

23   <u>27.</u> Correctional Officer Ramirez, a Defendant in this matter,

24   is and was at all times mentioned herein a Correctional Officer

25   at SVSP.

26                                    /

1    28. DOE1-Associate Warden-A-Facility is and was at all times
2    mentioned herein, to the best of Plaintiff's knowledge, the SVSP
3    A-Facility Associate Warden, and is a Defendant in this matter.

4    29. Defendant DOE2-UOF Coordinator-SVSP is and was, to the
5    best of Plaintiff's knowledge, at all times mentioned herein
6    the Use of Force (UOF) Coordinator.

7    30. Defendant DOE3-Unknown/Unidentified Correctional Ser-
8    geant is and was, to the best of Plaintiff's knowledge, at all
9    times mentioned herein a Correctional Sergeant at SVSP.

10   31. Defendants DOES 4-10, inclusive, are unidentified CDCR
11   employees.

12

13   III. JURISDICTION.

14   32. This is a civil action authorized by 42 U.S.C. §1983 to
15   redress the deprivation, under color of state law, of rights
16   secured by the Constitution of the United States.  This Court
17   has jurisdiction over this matter under 28 U.S.C.§§1331 and
18   1343.  This Court also has supplemental jurisdiction over the
19   Plaintiff's state law and constitutional claims under U.S.C.
20   §1367, and Plaintiff requests this Court to exercise supple-
21   mental jurisdiction over Plaintiff's state law and constitu-
22   tional claims.  This Plaintiff also seeks declaratory relief
23   under 28 U.S.C. §§2201, 2202 of which this Court also has juris-
24   diction.  The Northern District of California is the appropriate
25   venue under 28 U.S.C. §1391(b)(2) as the events underlying this
26   action occurred within this District. Pursuant to California

1   Government Code (GC) §845.6 Plaintiff has leave to bring this
2   action against       the      CDCR      and the State of Cali-
3   fornia as Defendants subject to liability in addition to indi-
4   vidual Defendants for the limited Cause of Action for failure
5   to summon medical care.  Plaintiff's interpretation of this
6   statute leads him to believe that it is applicable only upon
7   the finding  that a) the CDCR's and the State's Defendant employ-
8   ees knew of Plaintiff's need for medical care at the time in
9   question, and b) that the Defendant employees failed to summon
10  medical care for Plaintiff at the time in question.  This civil
11  action is also brought pursuant to 42 U.S.C. §§1985(3), 1986,
12  and 29 U.S.C. §794.

13                              /
14                              /
15                              /
16                              /
17                              /
18                              /
19                              /
20                              /
21                              /
22                              /
23                              /
24                              /
25                              /
26                              /

First Amended Complaint
18-cv-1376-CRB                    6

1   IV. FACTS:

2      33.  At all times mentioned herein all human Defendants
3   were employed by the State of California, Department of Cor-
4   rections and Rehabilitation at Salinas Valley State Prison and
5   were acting under color of state law.

6      34.  Each Defendant is sued in an individual capacity.

7      35.  At all times mentioned herein Plaintiff was a prisoner
8   in the custody  of the California Department of Corrections
9   and Rehabilitation (CDCR), at Salinas Valley State Prison
10  (SVSP); a dependent adult pursuant to California Penal Code (PC)
11  §368(h) and California Welfare and Institutions Code (WI)
12  §15610.23(a); a participant in the CDCR's Disability Placement
13  Program (DPP) as an Americans with Disabilities Act (ADA) qual-
14  ified prisoner with both hearing and mobility impairments; a
15  mental health services patient within the confines of the
16  Extended Outpatient Program housing; and a victim of and a wit-
17  ness to a crime pursuant to PC §136.

18     36.  At all times mentioned herein the CDCR was an agency
19  and its staff and employees were persons providing care and
20  services for dependent adults--including Plaintiff--pursuant
21  to WI §15610.17(y).

22     37.  At all times mentioned herein and being subsequent
23  to the beating, Plaintiff believes that Defendants Gutierrez,
24  Aboytes, Caballero, J. Ramirez, Vasquez, and Valles knew Plain-
25  tiff was a victim of and a witness to crimes and violations
26  committed by Defendants.

1      38.  At all times mentioned herein Defendants Gutierrez,

2  Perez, Aboytes, Caballero, J. Ramirez, Valles, Gudino, Vasquez,

3  Ayala, Martinez, Shaltry, McClellan, Ramirez, Magana, Villa-

4  fuerte, Camacho, and Jew knew Plaintiff was a dependent adult

5  and was afflicted with both mental and physical impairments

6  and/or disabilities.

7      39.  At all times subsequent to the beating Defendants

8  Celaya, Poody, Muniz, and Quintero knew or should have known

9  Plaintiff was a DPP prisoner with qualifying ADA disabilities,

10  a mental health services patient residing within the confines

11  of the Extended Outpatient Program housing, and a victim of and

12  a witness to a crime pursuant to PC §136.

13      40.  Pursuant to California Code of Regulations (CCR),

14  Title 15, Division 3, §3380(a), Defendant Muniz, as the Warden

15  of SVSP at all times mentioned herein, is lawfully and speci-

16  fically charged with responsibility for the treatment of all

17  inmates under his charge.

18      41.  Pursuant to CCR 3271, every employee, regardless of

19  his or her assignment, is responsible for the safe custody of

20  inmates.

21  DETAILS OF INCIDENTS

22      February 28, 2017--Event I

23      42.  On February 28, 2017, subsequent to approaching Defen-

24  dant Valles in the A-Facility dining room upon completion of

25  his breakfast, Plaintiff informed Defendant Valles that he re-

26  quired medical care.  Defendant Valles handcuffed Plaintiff

1  and requested a guard to report to the dining room to remove

2  Plaintiff.  Defendant Vasquez and, Plaintiff believes, Defen-

3  dant Ayala reported to the dining room to escort Plaintiff.

4  Defendant Vasquez relieved Plaintiff of his cane and carried

5  the cane to the A-Facility Gym.  Plaintiff believes that Defen-

6  dant Ayala accompanied Defendant Vasquez in escorting Plaintiff

7  to the gym.

8      43.  Defendants Vasquez and Ayala placed Plaintiff into

9  a holding cage in the gym.  Defendant Vasquez set down Plain-

10 tiff's cane outside of the cage out of Plaintiff's reach and

11 then unlocked the port of the holding cage and removed Plain-

12 tiff's handcuffs.  Defendant Vasquez then asked Plaintiff for

13 the reason for Plaintiff's removal from the dining room.  Plain-

14 tiff informed Defendant Vasquez that he did not want to discuss

15 it with him.  Defendant Vasquez stated to Plaintiff, "The sooner

16 you tell me, the sooner you'll get out of there."  Plaintiff

17 again declined to discuss it with Defendant Vasquez.  Defendant

18 Vasquez then ordered Plaintiff to strip out (remove clothing).

19     44.  Plaintiff began removing his clothing and pushing it

20 through the portal.  When Plaintiff pushed his shirts through

21 the portal Defendant Vasquez pushed them back through the por-

22 tal where they landed on the floor.  Plaintiff continued un-

23 dressing and pushing his clothing out of the cage through the

24 portal.  Defendant Vasquez said to Plaintiff, "If you hit me

25 with anything I'll f--- you up."  Up to this point in this event

26 Plaintiff was in no manner disruptive or threatening, nor had

1    Plaintiff violated any rules.

2        45. Minutes following the completion of the strip-search
3    Defendant Camacho arrived at the gym and asked Plaintiff what
4    was the matter.  Plaintiff told Camacho that he was okay and
5    that he just needed the finger splint about which Defendant
6    Camacho and Plaintiff had spoken prior to the breakfast meal
7    service.  Defendant Camacho informed Plaintiff that he would
8    notify the A-Facility medical clinic.  Defendant Camacho com-
9    pleted a CDCR 7219 Medical Report of Injury or Unusual Occur-
10   rence.  While Defendant Camacho did notify the A-Facility medi-
11   cal clinic, he did not indicate on his medical report Plain-
12   tiff's need for a finger splint, instead indicating that Plain-
13   tiff stated only that he was okay.  Defendant Camacho, as the
14   Psychiatric Technician responsible for those EOP patients in
15   A-Facility's Building Five, in which Plaintiff was housed, sub-
16   mitted this falsified medical report into what would later be-
17   come a crime/incident report.

18       46. Minutes following the completion of Defendant Camacho's
19   medical check Plaintiff was interviewed by a guard whom he be-
20   lieves to be Defendant Gutierrez.  Defendant Gutierrez stated
21   to Plaintiff that he remembers Plaintiff having been in the
22   holding cage the previous morning, and that he was tired of
23   seeing me in the cage.  Defendant Sgt. Gutierrez then asked
24   Plaintiff the reason for being removed from the dining room.
25   Plaintiff informed Defendant Gutierrez that he needed a new
26   splint for his injured finger.  Defendant Gutierrez then asked

1    Plaintiff why he did not seek medical care during the pill
2    pass occurring before breakfast.  Plaintiff informed Defen-
3    dant Gutierrez that he had sought such medical care and
4    that Defendant PT Camacho informed him he would need to go
5    to the A-Facility clinic.

6        47.  Defendant Gutierrez next began to lecture Plain-
7    tiff on the subject of sick-call procedures.  Plaintiff
8    told Defendant Gutierrez that he does not need him to lec-
9    ture Plaintiff about procedures.  At this, Defendant Gut-
10   ierrez and three loitering officers departed the gym.

11       48.  Within a couple of minutes Defendant Sergeant
12   Gutierrez and three other guards entered the gym and took
13   up standing positions basically in the front area of the
14   cage containing Plaintiff.  Defendant Gutierrez instructed
15   one of the guards to release me from the cage.

16       49.  A guard unlocked the cage door. Plaintiff exited
17   the cage, walked the approximate three feet to where his
18   clothing was piled, and began dressing.  All four of the
19   present guards stood in an approximate partial circle as
20   Plaintiff dressed.

21       50.  Plaintiff recalls having got almost completely
22   dressed except for one shoe, or one sock and one shoe.
23   When bending over to retrieve one of those items to put
24   on Plaintiff fell forward to the floor in what has been
25   described as a vertiginous episode which is a component
26   of Meniere's Disease, of which Plaintiff is afflicted.

1   Up to this point in this event Plaintiff was in no way
2   disruptive or threatening, nor had Plaintiff violated any
3   rules.

4       51.   One or more of the guards present repeatedly told
5   Plaintiff to get up from the floor.  Plaintiff heard a
6   voice say, "That's it, just a couple inches over."  A voice
7   said to Plaintiff that he didn't hit his head, and to get up.

8       52.   Plaintiff heard a voice say, "I'll be back in two
9   minutes.  If you're not up by then I'm going to give you a
10  battery on a peace officer."  Plaintiff believes this voice
11  to have been that of Defendant Gutierrez.

12      53.   While Plaintiff remained on the floor there were
13  no efforts made by any of the guards present to summon or
14  provide medical care for Plaintiff.

15      54.   Plaintiff believes that the three officers who
16  entered the gym with Defendant Gutierrez prior to the re-
17  lease of Plaintiff from the cage were Defendants Vasquez,
18  J. Ramirez, and Aboytes.  Plaintiff believes that also
19  present in the gym during this incident were Defendants
20  Caballero, Gudino, Velasquez, and Ayala.  Plaintiff is
21  informed that the guards who released him from the cage
22  are reported to have been Defendants Caballero, Aboytes
23  and J. Ramirez.  Plaintiff has never been able to posi-
24  tively identify those Defendants or persons present imme-
25  diately following his fall to the floor, and his awareness
26  has been shaped by the information revealed or provided

First Amended Complaint
18-cv-1376-CRB                        12

1   to him by custody staff and investigators over the many
2   months of interviews which resulted from this incident.
3   Plaintiff believes those to be present while Plaintiff
4   writhed on the floor were Defendants Gutierrez, Caballero,
5   Aboytes, Ramirez, Velasquez, Vasquez, Ayala and Gudino.
6   Plaintiff believes it is these Defendants who failed to
7   summon and provide medical care for Plaintiff.  Up to this
8   point in this event Plaintiff has not been disruptive nor
9   threatening in any manner whatsoever and has broken no
10  rules.

11      <u>55.</u>  Plaintiff has never been accused of having caused
12  any disruption throughout this event to this point.

13      <u>56.</u>  Plaintiff violated no prison rules, has never been
14  accused of nor charged in any fashion with having commit-
15  ted any violations of any nature during the preceding actions
16  of this event.

17      <u>57.</u>  While Plaintiff remained on the floor he was struck
18  numerous times, both suddenly and without warning.  Plain-
19  tiff's notes written shortly following the event indicate
20  his first being struck twice on the left side of his head;
21  struck on the right temple; kneed on the right temple; and
22  then receiving additional blows to the left side of my head.
23  Plaintiff does not presently remember the additional blows
24  to his head and, at least as of August 30, 2017, he did not
25  remember them and so is unable to state how many such addi-
26  tional blows he received.  The information about the additional

First Amended Complaint
18-cv-1376-CRB                    13

1   blows is taken from the previously-mentioned notes.

2   <u>58.</u>  The blows to Plaintiff were violent, hard, and were
3   delivered in fairly quick succession.  Plaintiff was unable
4   to protect and/or defend himself from the blows from the De-
5   fendant(s).  Plaintiff was unable to counter the attack of
6   the Defendant(s).  Plaintiff was unable to see which Defen-
7   dant(s) attacked him.  Plaintiff does not know which Defen-
8   dant(s) struck him.

9   <u>59.</u>  Plaintiff <u>thinks</u> that those who struck him include
10  Defendants Gutierrez, Aboytes, Caballero,  J. Ramirez, Vasquez,
11  and Velasquez.  However, Plaintiff <u>believes</u> the attack was
12  conducted by not every Defendant named within this paragraph.

13  <u>60.</u>  During the attack Plaintiff remained on the floor.
14  During the attack Plaintiff heard a voice tell me to stop
15  resisting.  During the attack none of the Defendants made any
16  effort to intervene in the beating of Plaintiff, nor to come
17  to his aid, including those in ¶59 above.

18  <u>61.</u>  Subsequent to the blows being struck Plaintiff was
19  handcuffed while still on the ground, and was so restrained
20  with either waist-chained cuffs, or standard handcuffs.

21  <u>62.</u>  Subsequent to being cuffed Plaintiff heard a voice
22  announce a battery on a peace officer to which a female voice
23  announces radio silence except for emergency traffic.

24  <u>63.</u>  While still on the ground Plaintiff's pants, sock(s)
25  and shoe(s) are taken off by staff.  Leg chains are put onto
26  Plaintiff.

First Amended Complaint
18-cv-1376-CRB                    14

1    64. Plaintiff has waist-chains put on him (if not already
2    done so as stated in ¶61), and then Plaintiff is put into a
3    wheelchair, to the best of his recollection.

4    65. Plaintiff's ADA vest and shirts are cut off of him
5    while he is in the wheelchair.

6    66. While in the wheelchair a medical examination of
7    Plaintiff is reportedly conducted by LVN S. Gardner, the
8    results of which are recorded on a CDCR 7219, Medical Report
9    of Injury or Unusual Occurrence.

10   67. While in the wheelchair photographs of Plaintiff
11   are reportedly taken by Investigative Services Unit Correc-
12   tional Officer J. Peffley.

13   68. Subsequent to the medical examination and photo-
14   graphing, Plaintiff was tranported to the prison's emergency
15   room (CTC) by the prison's Emergency Response Vehicle.

16   69. CTC medical staff examined Plaintiff and prepared
17   him for transport via AMR ambulance to the local hospital's
18   emergency room for treatment of his wounds received during
19   Plaintiff's beating.

20   70. While enroute to the local hospital, but prior to
21   clearing prison grounds, the AMR ambulance medical personnel
22   chose to divert from Natividad Medical Center, Code 2, to
23   Salinas Valley Memorial Hospital, Code 3 as their EKG indi-
24   cated that Plaintiff was experiencing an acute abnormal heart
25   episode.

26   71. Subsequent to treatment at the hospital Plaintiff

1    was returned to SVSP the same day and placed into admini-
2    strative segregation.

3    _72._   While in administrative segregation Plaintiff was
4    examined by medical personnel on what seemed like a daily
5    basis, and by a doctor or Physician's Assistant several times
6    over the course of a few weeks, and relative to the injuries
7    Plaintiff received during his beating on February 28, 2017.
8    During one of these medical examinations a doctor informed
9    Plaintiff that he had suffered a concussion as one of the
10   injuries received during the beating.

11   _73._   Plaintiff reportedly ended up with ten (10) sep-
12   arately-noted injuries on six (6) separately-noted areas
13   of his face and head, in addition to the concussion, and
14   also as the result of the aforementioned beating.  These
15   visible injuries included cuts, bruises, reddening, swelling
16   and, additionally, two black eyes still visible and, Plain-
17   tiff believes, noted by Plaintiffs' attorney for the Armstrong
18   Compliance case during a visit from the Prison Law Office
19   to Plaintiff on March 17, 2017.

20   _74._   Directly related to the February 28, 2017, beating,
21   Defendants Gutierrez, Gudino, Aboytes, Caballero, J. Ramirez,
22   Vasquez, Ayala and Camacho falsified and submitted documents,
23   including crime/incident reports which contained untrue in-
24   formation about the details of the beating event, and they
25   each submitted these documents and/or crime/incident reports
26   to a peace officer.

First Amended Complaint
18-cv-1376-CRB                           16

1    75. Directly related to the February 28, 2017, beating
2  of Plaintiff, Defendants Gutierrez, Aboytes, Gudino, Ayala,
3  Caballero, J. Ramirez, Vasquez falsified documents and/or
4  crime/incident reports in concert with one another and,
5  thereafter, submitted them.

6    76. On about March 10, 2017, Defendants had information
7  demonstrating the Plaintiff had suffered a concussion during
8  and as a result of the February 28, 2017, beating.  Under
9  the rules and regulations of the Department of Corrections
10  and Rehabilitation a concussion is considered serious bodily
11  injury.  When a concussion results from any use of force
12  by staff an official and formal inquiry is required to be
13  conducted by CDCR/SVSP staff.  No reports were ever created
14  as  Defendants Celaya, Hughes, DOE1, DOE2, and Muniz failed
15  to conduct the requisite Use of Force Review and, therefore
16  failed to create the required documentation.

17    77. While in administrative segregation Defendant Poody
18  provided Plaintiff with his notice for administrative segre-
19  gation (ad seg) placement.  Subsequent to providing the re-
20  quired documentation Defendant Poody wanted to have an un-
21  official conversation with Plaintiff.  Defendant Poody asked
22  Plaintiff what occured on February 28, 2017.  Plaintiff told
23  Defendant Poody what occurred.  After receiving this infor-
24  mation Defendant Poody did not cause the required Use of
25  Force protocols to be implemented, nor did he, apparently,
26  report the unnecessary use of force as Plaintiff told him.

1    78. On March 16, 2017, Plaintiff filed with the CDCR
2    at SVSP a grievance regarding this beating. This grievance
3    was apparently lost after submission so Plaintiff resubmit-
4    ted the grievance on May 23, 2017. Upon staff becoming aware
5    of the allegation of unnecessary force, and of becoming aware
6    of a use of force resulting in serious bodily injury Defen-
7    dants failed to conduct a Use of Force Review (UOF).
8
9    **June 30, 2017--Event II**
10    79. On June 30, 2017, Plaintiff was returned to
11    A-Facility, and into the same building in which he had been
12    previously housed.
13    80. Upon stepping foot on A-Facility, Plaintiff was
14    met at the gate by Defendant Perez. Defendant Perez stated
15    to Plaintiff, "I remember who you are." Defendant Perez
16    then joined the officer who was escorting me to the build-
17    ing and when I looked at him I saw him looking at me in such
18    a way that I would describe as glaring. When Plaintiff was
19    exiting the building a few minutes later a guard spoke pri-
20    vately to Plaintiff, explaining that Plaintiff would have
21    to try extra hard to avoid any run-ins with the offending
22    Defendants. This was said in a friendly, concerned fashion.
23    81. On July 6, 2017, Plaintiff was called to the Pro-
24    gram Office on A-Facility. When I entered the office I found
25    Defendants Martinez, Shaltry and Gutierrez awaiting my arriv-
26    al. Also present was Correctional Sergeant Segura.

1    82.  At seeing Defendant Gutierrez Plaintiff looked at
2  his name tag and, apparently long enough to prompt Defen-
3  dant Gutierrez to order me to stop looking at it.  Defen-
4  dant Gutierrez took a position about a foot behind Plain-
5  tiff as Plaintiff stood just in the doorway of the Sergeants'
6  Office where Sgt. Segura, and Defendants Martinez and Shaltry
7  were seated.

8    83.  Defendant Martinez asked Plaintiff about a tele-
9  phone interview which had been conducted with Plaintiff by
10  Defendant Perez on June 27, 2017, regarding the grievance
11  I had filed against the beating Defendants, including the
12  present Defendant Gutierrez.  Defendant Martinez asked if
13  Plaintiff had been wearing his hearing aids during the tele-
14  phone interview.  Plaintiff confirmed that he had been wear-
15  ing the hearing aids.  Defendant Martinez asked if I under-
16  stood the nature of the interview.  I told Defendant Martinez
17  that I did.  Defendant Martinez then stated something to
18  the effect that he just wanted to ensure that effective commu-
19  nication had been achieved.  Upon hearing Defendant Martinez
20  say that, Plaintiff turned to depart.

21    84.  Upon Plaintiff turning to depart Defendant Martinez
22  began to berate Plaintiff.  Defendant Martinez, with a raised
23  voice, declared that it is this kind of attitude that got
24  me in trouble before, and that Plaintiff would not last long
25  if he didn't change his attitude.  Plaintiff did not respond
26  to Defendant Martinez.  Defendant Martinez continued to yell

1   at Plaintiff, berating and belittling him as Plaintiff stood
2   looking at Defendant Martinez.  After a couple of minutes
3   Defendant Martinez told Plaintiff that all he had to do was
4   say "Okay" and he could leave.  Plaintiff continued to remain
5   silent.  After about fifteen (15) minutes Defendant Martinez
6   ordered Sgt. Segura to place Plaintiff in a cage in the gym.

7       85.  Sergeant Segura complied by taking hold of my left
8   arm, escorting me--unrestrained--about halfway to the gym,
9   and then handing me off to Defendant Villafuerte, who placed
10  me in a cage, and then strip-searched me.

11      86.  Having completed his search of my clothing, Defen-
12  dant Villafuerte declined to allow me to wear anything more
13  than boxers for the approximate two (2) hours I was left
14  in the cage.

15      87.  Upon release from the cage Plaintiff quickly re-
16  trieved his clothing and departed the gym; Plaintiff was
17  concerned about being alone in the gym with any staff.

18      88.  During the actions occurring as described in ¶¶82-
19  86 Plaintiff was neither disruptive nor threatening, violat-
20  ed no rules, and was placed into the cage for reasons not
21  amounting to rules violations.

22      89.  On July 24, 2017, as Plaintiff sat at a table on
23  the A-Facility yard talking to another prisoner when Defen-
24  dant Caballero approached me and, from about two feet away,
25  asked me a question.  Not hearing him I asked, "What?"
26  Defendant Caballero asked, "Were you talking to me?!"

1  Plaintiff had not said anything to Defendant Caballero and,
2  in fact, had not spoken to Defendant Caballero since Plain-
3  tiff's return to A-Facility on June 30, 2017.  During this
4  exchange Defendant Caballero was loud, aggressive, and inti-
5  midating.  This exchange caused Plaintiff to fear for his
6  immediate safety.

7      90.  On July 24, 2017, the same day as ¶89 above, Plain-
8  tiff was summoned to the Program Office on A-Facility.  As
9  Plaintiff walked to the office he was intercepted by Defen-
10 dant Caballero who approached him from behind, calling his
11 name.  When he stopped, Defendant Caballero told him that he
12 was told to personally escort Plaintiff to the office.  Plain-
13 tiff resumed walking with Defendant Caballero following him.
14 As Plaintiff passed by Correctional Officer Gaska he heard
15 Officer Gaska inform Defendant Caballero that Plaintiff did
16 not require an escort.  Defendant Caballero discontinued the
17 escort, and Plaintiff continued the walk alone.  Officer
18 Gaska is not Defendant Caballero's formal or informal super-
19 visor in any way whatsoever.

20     91.  As Plaintiff approached the pedestrian gate near
21 the office he was met by Defendant Sergeant Gutierrez who
22 instructed him to go to the Program Office.

23     92.  At the Program Office I was met by a Lieutenant
24 Jones from the Investigative Services Unit who interviewed
25 me relative to the February 28, 2017, beating and staff com-
26 plaint I filed against, among others, Defendants Gutierrez

1   and Caballero.

2   93.  On July 29, 2017, as Plaintiff departed the dining
3   room on A-Facility following breakfast, he  and another
4   prisoner  were instructed to put their hands on the wall.
5   Both complied and Plaintiff was situated facing the wall
6   with his hands on that wall in a position to be searched.
7   Plaintiff was about four (4) inches to the right of the
8   other prisoner.  Plaintiff was searched by Correctional
9   Officer Lord, and the other prisoner was searched by Correc-
10  tional Officer  Avalos, and Defendant Caballero.  At the
11  conclusion of his search Plaintiff began to walk toward his
12  housing unit but stopped when he heard people yelling for
13  the prisoners to "get down," (meaning to sit on the ground
14  because there is an "emergency" type of action or, in the
15  alternative, for prisoners to otherwise cease movement).

16  94.  Plaintiff stopped walking and stood just inside
17  the yard-side of the pedestrian gate located nearest the
18  southernmost dining room's southernmost door.  Plaintiff
19  possessed his cane and was not wearing his ADA vest.  Plain-
20  tiff stood watching the activity occurring with the other
21  prisoner being searched and Officer Avalos and Defendant
22  Caballero[1].

23  95.  As Plaintiff stood there he was approached by,
24                                    /

25  1: Plaintiff has more to relate on this activity but is not sure that
    this FAC is the appropriate vehicle with which to present such
26  information.

1   he believes, Correctional Officer J. Hart.  Hart informed
2   Plaintiff that he is to wear his ADA vest so that staff
3   can see that Plaintiff is not required to sit during such
4   situations.  Hart explained that if I have a cane I need
5   to wear my mobility vest also.  Hart told Plaintiff that
6   he was going to tell this to Plaintiff only once.  Hart
7   departed, and Plaintiff remained standing and observing
8   the activity occurring with the other prisoner and officers.
9       96.  Briefly, the activity between the other prisoner
10  and Defendant Caballero involved, in part, Caballero and
11  the prisoner ending up on the ground, several other officers
12  responding and assisting, and the other prisoner being taken
13  to the gym.  During that activity, and before movement was
14  resumed, Defendant Caballero broke off from that situation,
15  traversed the twenty-three (23) paces from the area of that
16  situation to where Plaintiff stood, and confronted Plain-
17  tiff in an aggressive, boisterous manner.  Defendant
18  Caballero confronted Plaintiff regarding sitting on the
19  ground during emergencies.  While holding his cane in view
20  of Caballero the Plaintiff told Defendant Caballero he is
21  unable to sit on the ground.  Defendant Caballero ordered
22  Plaintiff, several times, to sit on the ground.  Each time
23  the order was repeated Plaintiff replied that he can't sit
24  on the ground and added on one or more of the orders that he
25  can't sit down because of his medical affliction and/or be-
26  cause he is mobility impaired.  It was repeated so many

1   times that Plaintiff lost track of the reasons explained
2   and when they were offered to the Defendant.  Defendant
3   Caballero stated to Plaintiff that he doesn't know that
4   Plaintiff can't sit if Plaintiff is not wearing his vest.

5       97.  Defendant Caballero broke off the confrontation
6   with Plaintiff and either stated he was going to get the
7   waist chains or he asked another guard to do so.  By this
8   time five or six guards had amassed around me.  As we all
9   awaited the arrival of the waist chains Correctional Officer
10  K. Murphy, unannounced and from behind, began to conduct
11  a clothed body search of Plaintiff.  Every time Plaintiff
12  turned his head to better hear the guard, the guard ordered
13  me to look straight ahead.  When he completed this second
14  search of Plaintiff we all continued to stand and await the
15  arrival of the waist chains.

16      98.  When the waist chains arrived Defendant Caballero
17  put them on Plaintiff and then the Defendant took Plaintiff
18  to the gym with the assistance of Correctional Officer
19  J. Vasquez.  Defendant Caballero placed Plaintiff in a cage
20  and, without closing and securing the cage door, ordered
21  Plaintiff to strip for another search.  Defendant Caballero
22  conducted this search with the cage door open and observed
23  by C/O J. Vasquez.  The Defendant and the guard then departed
24  the gym.

25      99.  Defendant Caballero returned to the gym with Defen-
26  dant DOE3-Unknown/Unidentified Correctional Sergeant whom

1    Plaintiff believes to be L. Hernandez.  Defendant DOE3 spoke
2    to Plaintiff about a requirement to wear his vest.  When he
3    finished speaking he instructed Defendant Caballero to issue
4    to Plaintiff a Rules Violation Report (RVR) for refusing to
5    "prone out," and for not wearing his vest.

6         100.  Several minutes later two Psych Techs (PT) arrived
7    and asked why I requested to see them.  I said that I did
8    not ask to see anybody.  At this time Defendant DOE3 inter-
9    jected, stating that he wanted the PTs to check Plaintiff's
10   hearing aids as, he said, the Plaintiff had claimed to not
11   have heard Defendant Caballero tell him to prone out.  Hav-
12   ing very clearly heard DOE3's proclamation, Plaintiff quickly
13   told PT Seok that that is not true.  PT Seok told Defendant
14   DOE3 that they do not check hearing aids, and the PTs depart-
15   ed the gym.  Plaintiff believes it was as the PTs departed
16   that Defendant Caballero informed Plaintiff he would be giv-
17   ing Plaintiff a RVR.  Everybody--except Plaintiff--then
18   departed the gym.

19        101.  A minute or so later Defendant Caballero returned
20   to the gym, alone, and opened the door of the cage which
21   held the Plaintiff.  Defendant Caballero told Plaintiff to
22   step out of the cage.  As Plaintiff did so Defendant
23   Caballero reached into the cage behind Plaintiff, grabbed
24   Plaintiff's apple from atop Plaintiff's lunch which was
25   setting on the shelf in the cage and threw it to the floor.
26   Defendant Caballero next placed a hand on the back of Plain-

1   tiff's head and hit the cage door into his head.  Defendant
2   Caballero said something to the effect that Plaintiff should
3   watch his step.  Plaintiff believes there were several guards
4   waiting and watching this from the outside of the gym door.
5   Defendant Cabellero locked Plaintiff back in the cage. Short-
6   ly thereafter Plaintiff was released from the cage by a
7   guard, picked up his clothing from the gym floor and went
8   outside before dressing.

9   102.  In this encounter Defendant Caballero was aggressive
10  toward Plaintiff.  Plaintiff felt intimidated by the actions
11  and demeanor of Defendant Caballero, and was in fear for
12  his safety from Defendant Caballero, Defendant DOE3, and
13  the guards outside of the gym door.  Plaintiff was unable
14  to debate the necessity of having to get on the ground dur-
15  ing such situations because Plaintiff, once in the gym and
16  in a cage, was in the same situation as he was on the day
17  of the beating on February 28, 2017.

18  103.  By the time Plaintiff arrived at his housing unit
19  following his release from the cage (Plaintiff returned dir-
20  ectly to that location after dressing)his head hurt.  He
21  informed Officers J. Vasquez and R. Magana of this.  Short-
22  ly after entering his cell a female PT arrived at Plain-
23  tiff's door and inquired as to the injury.  I told her my
24  head hurt.  Shortly after she departed a nurse arrived at
25  my door.

26  104.  Defendant Registered Nurse Glenn Shiple arrived

1   at Plaintiff's cell at around 10:00AM on July 29, 2017.
2   While at Plaintiff's cell Defendant Shiple informed Plain-
3   tiff of a red mark on Plaintiff's forehead.  Plaintiff had
4   mentioned only that his head hurt, and when Plaintiff looked
5   into the mirror in his cell he could see the mark.  Defen-
6   dant Shiple informed Plaintiff he would have him called to
7   the clinic.

8   105.  Plaintiff later met Defendant Shiple at the clinic.
9   Defendant Shiple asked Plaintiff how he had hurt his head and
10  Plaintiff informed him that a guard had hit my head into
11  the cage door.  Defendant Shiple wrote on his exam form his
12  version of my statement which does not accurately represent
13  what I told him.  He failed to implement UOF protocols.

14  106.  On August 3, 2017, Plaintiff met with his Extended
15  Outpatient Program (EOP) Primary Clinician (PC), Defendant
16  H. Jew.  During this session Plaintiff discussed with his
17  PC the February 28, 2017, beating, which was a continuation
18  of a prior session, as well as informed her of the recent
19  confrontations with staff, both involved in the beating
20  and uninvolved.  Plaintiff informed Defendant Jew of both
21  the July 6, 2017, confrontation with Defendant Martinez,
22  and also of the July 29, 2017, confrontation with Defendant
23  Caballero, including informing her of the use of unnecessary
24  force with the hitting of the cage door into my head.  Defen-
25  dant Jew failed to implement UOF protocols.

26  107.  Up to this point since his return to A-Facility on

First Amended Complaint
18-cv-1376-CRB                     27

1    June 30, 2017, Plaintiff has not in any manner been disrup-
2    tive nor threatening toward staff nor displayed any con-
3    duct which would require his placement in a holding cage.
4    Up to this point since his return to A-Facility on June 30,
5    2017, Plaintiff has not engaged in any unlawful or inappro-
6    priate behavior of which staff would be aware and, as such,
7    Plaintiff has received no disciplinary RVRs.

8      108.  On August 9, 2017, Defendant Gutierrez observed
9    Plaintiff standing against a fence as other prisoners were
10   on the ground during a medical emergency.  Defendant Gutierrez
11   ordered Plaintiff to sit on the ground.  Plaintiff possessed
12   his cane at the time and it was in view of the Defendant.
13   Plaintiff informed Defendant Gutierrez that he was unable to
14   sit on the ground.  Defendant repeated his order several
15   times, and Plaintiff replied each time that he is unable to
16   sit on the ground.  Defendant ended the confrontation by
17   telling Plaintiff that he can sit and, "I'll talk to you
18   about it later."

19     109.  About 30-minutes after the confrontation in ¶108,
20   above, Plaintiff was crossing the A-Facility yard when an
21   alarm sounded for a medical emergency in Building 2.  As
22   Plaintiff was very close to the tables in front of Build-
23   ing 3, he sat at a table there which was equipped with a
24   bench seat.  After a few minutes Plaintiff spied Defendants
25   Shaltry and Villafuerte entering the yard from the patio
26   through the pedestrian gate located near the laundry room.

1   Plaintiff continued to watch these two Defendants as they
2   made a beeline across the recreation field toward Plaintiff.
3   When the Defendants arrived at Plaintiff's location Defen-
4   dant Shaltry ordered Plaintiff to sit on the ground. Plain-
5   tiff told him that he is unable to sit on the ground. Defen-
6   dant Shaltry kept repeating his order for Plaintiff to sit on
7   the ground. Plaintiff repeated that he is unable to sit on
8   the ground, adding each time that he is unable to do so with-
9   out pain and the potential for a medical event. Defendant
10  Shaltry stated that if Plaintiff is not wearing a vest then
11  he must sit on the ground. Defendant Shaltry also stated
12  that the purpose of Plaintiff's cane is to help him up and
13  down from the ground. Plaintiff again informed Defendant
14  Shaltry of his inability to sit on the ground without pain
15  and the potential for a medical event. At this, Defendant
16  Shaltry said to Plaintiff, "Well, you're sitting now," re-
17  ferring to my sitting on the bench.

18  110. As the confrontation of ¶109 evolved, Defendant
19  Magana joined Defendants Shaltry and Villafuerte. Subse-
20  quent to Defendant Shaltry's last comment Plaintiff decided
21  the conversation was no longer valid. Defendant Shaltry
22  ordered Defendant(s) Magana and/or Villafuerte to write
23  a RVR against Plaintiff, followed immediately by Shaltry
24  stating, "It'll be administrative so I'll hear it." All
25  three Defendants then departed. Plaintiff remained seated
26  at the table.

1    111.  About five minutes after Defendant Shaltry depart-
2    ed Plaintiff was summoned from behind and he turned to see
3    Defendants Shaltry, Gutierrez, Villafuerte, and Magana on
4    the pathway behind Plaintiff, and about ten feet away.  De-
5    fendant Gutierrez motioned for me to come over to the group.
6    Plaintiff got up from the table and walked over to the group.

7    112.  Once at the group Defendant Gutierrez informed Plain-
8    tiff the he needs to sit on the ground.  Plaintiff informed
9    Gutierrez that he had already been told the same thing by
10   Defendant Shaltry.  Defendant Gutierrez repeated himself,
11   but added that if Plaintiff is not wearing his vest then
12   he is not allowed to be on the yard.  Defendant Gutierrez
13   then asked Plaintiff for his identification, and Plaintiff
14   responded that it is with his belongings across the yard.
15   Defendant Gutierrez instructed Plaintiff to get his ID when
16   the "resume" announcement occurs and to return to the group
17   of guards.  Plaintiff retrieved his ID, and was then sum-
18   moned to the Program Office by Defendant Shaltry.

19   113.  Inside the office Plaintiff encountered Defendants
20   Shaltry, Gutierrez, and Villafuerte, as well as another
21   sergeant.  Defendant Shaltry used his computer to review
22   information about Plaintiff, and asked Plaintiff what his
23   DPP/ADA impairment codes are.  When Plaintiff replied with
24   the codes Defendant Shaltry began repeating what he and
25   Defendant Gutierrez had previously told Plaintiff.  I told
26   Defendant Shaltry that I felt our conversation was finished

1   considering that he had already ordered that I receive a

2   disciplinary report and that I would respond to that when

3   I get it.  Defendant Shaltry stated that I have 51 points

4   (classification score) and that I'd be off the yard soon

5   enough, anyway.  I turned and departed the office.

6   114.  Shortly after I departed the Program Office I was

7   summoned to the fence at the seating bench.  Defendant

8   Gutierrez, who had summoned me, stated, "You won't be safe

9   anywhere in this prison!"

10   115.  These confrontations, and especially the way the

11   Defendants approached Plaintiff were very disconcerting

12   to Plaintiff.  Plaintiff was and felt humiliated by the

13   Defendants while in public when they confronted him.  He

14   felt intimidated by the aggressive and confrontational at-

15   titudes of Defendants Gutierrez and Shaltry.  Plaintiff

16   felt that his health and safety were in jeopardy by the

17   way the Defendants threatened him.  Plaintiff understood

18   Defendant Shaltry's threat of not lasting on this yard as

19   meaning that he would be subjected to further false accusa-

20   tions in "Serious" RVRs which would result in Plaintiff's

21   points going up to a level so as to make Plaintiff a Level

22   IV, maximum security prisoner and would require Plaintiff

23   to be transferred to a more dangerous prison or facility.

24   Plaintiff had no doubt about the meaning of Defendant

25   Gutierrez' threat: Even if Plaintiff was removed from this

26   yard due to his points going up and was put on D-Facility

1   in this prison--which is a maximum-security facility--then
2   Defendant Gutierrez would still be able to cause Plaintiff
3   physical harm.  Following the threat of Defendant Gutierrez
4   Plaintiff returned to his cell as soon as he could.

5       116.  On the same day as these latest confrontations Plain-
6   tiff wrote and submitted two (2) CDCR-22, Inmate/Parolee
7   Request for Interview, Item or Service forms regarding the
8   staff-initiated confrontations Plaintiff has experienced
9   since his June 30, 2017, return to A-Facility.  One was
10  addressed to the A-Facility Captain, and the other was ad-
11  dressed to Defendant Warden Muniz.  These were written and
12  submitted on August 9, 2017.  Subsequent to these confron-
13  tations Plaintiff was informed by another prisoner about
14  some guard talking about Plaintiff with another prisoner
15  about possibly assaulting Plaintiff.  This was also addressed
16  in the above submissions.

17      117.  On August 10, 2017, Plaintiff submitted a CDCR-602,
18  Inmate/Parolee Appeal, addressing the issue of the numerous
19  staff-initiated confrontations.  Administrative remedy ex-
20  haustion was effectively achieved when Plaintiff was removed
21  from A-Facility and placed into administrative segregation
22  as described below.

23      118.  On August 14, 2017, Plaintiff was approached in
24  his housing unit by Defendants Gutierrez, McClellan, Valles,
25  Caballero and, Plaintiff thinks, Shaltry, as well as Cor-
26  rectional Officer J. Hart, in response to the CDCR 22 Plain-

1  tiff had submitted on August 9, 2017, in which he wrote:

2       "Since my return to SVSP on June 30, 2017,
        I have experienced at least eight (8) staff-initiated
3       confrontations involving custody staff directly
        and indirectly involved in my Feb. 28, 2017, beat-
4       ing.  These confrontations go as high as the lieu-
        tenant on A-Yard.  Today I was confronted three
5       times and directly threatened twice by guards.
        I fear for my safety with guards in this prison,
6       and especially upon getting word of a guard dis-
        cussing me with another prisoner, apparently to
7       assault me.  These are guards against whom I've
        filed staff complaints and who are being investi-
8       gated for brutality against me. Do something."

9  The response to Plaintiff's safety concerns was to approach

10 Plaintiff with six guards, two of whom were the subjects

11 of the brutality complaint, and two of whom were those who

12 threatened Plaintiff on August 9, shackle Plaintiff in

13 waist-chains, and place him into a cage in the gym, which

14 Defendants did.  Plaintiff was strip-searched.

15    119.  Defendants McClellan and Shaltry interviewed Plain-

16 tiff first, and this conversation quickly devolved into

17 dismissiveness of Plaintiff's safety concerns and of dis-

18 cussing the matter with Defendant McClellan in front of

19 Defendant Shaltry, to whom Plaintiff refers in the subject

20 CDCR-22.

21    120.  Following the above inconclusive interview of ¶119,

22 Plaintiff was escorted from the cage to the office of Defen-

23 dant Martinez, where he was interviewed further by this Defen-

24 dant.  Again, this was an interview regarding my safety con-

25 cerns being conducted by one of those to whom I directly

26 refer in the CDCR-22s as having concerns with.  For about

1   an hour Defendant Martinez tries to convince Plaintiff
2   that he (Plaintiff) should have no reason for fearing for
3   his safety, and attempts to dissuade Plaintiff from seeking
4   protection from staff.  Defendant Quintero was called in
5   to the interview by Defendant Martinez, attempts to con-
6   vince and dissuade Plaintiff of the same things and, in
7   fact, tells Plaintiff that he will be at Plaintiff's ad-
8   seg committee hearing and that he will simply have Plain-
9   tiff released from ad-seg and placed on the maximum-security
10  D-Facility.  Plaintiff refused to withdraw his submission,
11  and he was eventually placed into administrative segrega-
12  tion for his staff-safety concerns.
13    121.  At no time since Plaintiff's return to A-Facility
14  and up to this point was Plaintiff disruptive or threaten-
15  ing to any staff, nor had Plaintiff violated any rules that
16  staff knew about except for not having his identification
17  on his person, and Plaintiff  has yet to have  been issued
18  any RVRs for any violations, despite the numerous threats
19  by staff to do so.
20    122.  On August 24, 2017, Plaintiff appeared before the
21  ad-seg Institution Classification Committee (ICC) for ini-
22  tial review of his ad-seg placement.  In attendance were
23  Defendants Quintero, Muniz, as well as other staff.  During
24  this hearing Defendant Quintero attempted and recommended
25  to Defendant Muniz to have and that Plaintiff should be
26  placed on D-Facility.  Defendant Muniz instead chose to

1   retain Plaintiff in ad-seg and to have Plaintiff transfer-
2   red to another prison.

3   123.   Following this committee meeting Defendant Quintero
4   authored the classification committee chrono reflecting
5   his point of view of the reason for Plaintiff's ad-seg
6   placement, as well as other factors.   Quintero  wrote that
7   Plaintiff is concerned for his safety because beating-involved
8   staff are, "eye-f---ing him," that Plaintiff is at the En-
9   hanced Outpatient Program (EOP) level of mental health care
10  and that this is the cause as to why Plaintiff, "...per-
11  ceives his safety concern as viable."  Defendant Quintero
12  goes on to write, in relevant part, "Due to WHITALL's per-
13  ception of safety concerns with staff simply for looking
14  at him...."  And, "This is an adverse transfer.... Whitall
15  is NDS (non-disciplinary status) ineligible...due to making
16  unfounded statements concerning his safety." NDS is a formal
17  status in ad-seg which reflects that a prisoner in ad-seg
18  is so placed due to reasons other than having been in any
19  sort of trouble.  NDS prisoners in ad-seg are allowed more
20  privileges and property than are those who are in ad-seg
21  for having or being suspected of having committed viola-
22  tions of some sort.  Plaintiff was not in ad-seg for having
23  or being suspected of having committed violations of any
24  sort.

25  124.  On September 19, 2017, while still in ad-seg, Plain-
26  tiff was summoned to an office where he met with two invest-

First Amended Complaint
18-cv-1376-CRB                    35

1   igators who administered a polygraph examination of Plain-

2   tiff regarding the February 28, 2017, beating.

3   <u>125.</u>  On October 5, 2017, Plaintiff met with Defendant

4   Muniz who convinced Plaintiff to return to A-Facility, and

5   strongly suggesting that the reception of Plaintiff on that

6   facility would be better than the reception following Plain-

7   tiff's June 30, 2017, return.

8   <u>126.</u>  On about October 30, 2017, Plaintiff discovered that

9   Defendant Caballero and others had written informative

10   chronos about Plaintiff, and posted them to his prison file.

11   The Defendant(s) did not provide copies of these documents

12   to Plaintiff.

13   <u>127.</u>  On January 8, 2018, Plaintiff was engaged by Defen-

14   dants Ramirez, McClellan, and Shaltry regarding my not sitting

15   on the ground during an emergency.  In this instance Plain-

16   tiff was wearing his vest and possessed his cane, both of

17   which were in view of the Defendants.  I was initially en-

18   gaged by Defendant Ramirez and Defendant Gudino during the

19   emergency.  I was <u>confronted</u> by the four Defendants about

20   30 minutes after the fact.  Defendant Shaltry, after a brief

21   discussion between me and Defendants McClellan and Shaltry,

22   ordered Defendants Ramirez and Gudino to put me in a cage

23   in the gym.  I was strip-searched by Defendants Ramirez and

24   McClellan.  Defendants McClellan and Shaltry tried to engage

25   Plaintiff in the same refrain, but Plaintiff was afraid

26   to say anything because he had been beaten in the gym on

1   a previous occasion similar to this.  Because Plaintiff
2   did not engage Defendants McClellan and Shaltry in conver-
3   sation, Defendant McClellan announced that Plaintiff could
4   remain in the cage until he agreed to be "interviewed."
5   128.  Defendant Ramirez remained in the gym for most of
6   the time Plaintiff was locked in the cage.  Periodically
7   Defendant Ramirez would inquire as to if Plaintiff was ready
8   to speak.  Plaintiff remained as inconspicuous as possible.
9   129.  Plaintiff was kept locked in the cage for 3½ hours.
10   130.  Plaintiff was kept locked in the cage wearing only
11   his boxers.
12   131.  Plaintiff was kept locked in the cage for 3½ hours
13   without being given nor offered any water or an opportunity
14   to use the restroom.
15   132.  Plaintiff was released from the cage after 3½ hours
16   by Correctional Officer Welch III who stated he was in-
17   structed to tell Plaintiff to return to his housing unit.
18   133.  The emergency occurring on the A-Facility yard when
19   Plaintiff was initially approached by staff involved a pri-
20   soner alleged to have committed a battery on a peace offi-
21   cer.  This prisoner was placed into a gym cage about 30
22   minutes prior to Plaintiff being so placed.  This prisoner
23   was removed from the cage after about 90 minutes.  By con-
24   trast, Plaintiff was kept locked in a cage for at least
25   90 minutes longer than the other prisoner.
26   134.  Prior to being released from the cage Plaintiff was

First Amended Complaint
18-cv-1376-CRB                            37

1    not interviewed by any staff.  Subsequent to being released
2    from the cage Plaintiff was never interviewed by staff ex-
3    cept on March 23, 2018, relative to a complaint filed for
4    the mistreatment of Plaintiff by the Defendants involved.

5       135.  Plaintiff was under no obligation at the time of
6    the confrontation with the four Defendants as a group to
7    sit on the ground as there was no present emergency.  The
8    subject emergency occurred about 30 minutes prior.

9       136.  At no time up to and/or during the events preceding
10   the confrontation with the four Defendants as a group was
11   Plaintiff ever disruptive or threatening.

12      137.  At no time up to and/or during the events preceding
13   the confrontation with the four Defendants as a group did
14   Plaintiff ever violate any rules.

15      138.  At no time did Plaintiff ever receive a disciplinary
16   RVR related to this incident.

17      139.  At no time between Plaintiff's return to A-Facility
18   on June 30, 2017, and the final episode on January 8, 2018,
19   did Plaintiff receive any disciplinary RVR for any episodes
20   occurring between those dates and Plaintiff has not as of
21   March 23, 2018.

22      140.  Plaintiff believes that as of March 23, 2018, there
23   still has not been conducted a Use of Force Review.

24

25   INJURIES

26      141.  As a result of the February 28, 2017, beating at

1   the hands of Defendants Gutierrez, Aboytes, Caballero,
2   Ramirez, Vasquez, and/or Velasquez Plaintiff suffered the
3   following physical and mental injuries and distress:
4   a) concussion, b) abrasions and/or cuts to bilateral scalp
5   and face, left forehead, bilateral temples, c) headache/
6   facial pain, d) hematoma to left forehead and bilateral tem-
7   ples, e) left frontal scalp and right temple, f) heart epi-
8   sode, g) cut to left ear, h) post-traumatic stress disorder,
9   i) nightmares, j) exacerbated depression, k) exacerbated
10  anxiety, l) fearfulness, m) isolation, n) loss of consortium,
11  o) loss of privileges, p) loss of limited freedom, q) disci-
12  plinary repurcussion, r) harm to reputation (as a result
13  of the libelous reports of Defendants Plaintiff has been
14  subjected to the "jokes" of both custody and civilian staff
15  about his propensity for hitting people with his cane. Plain-
16  tiff does not see these as jokes.  Plaintiff has had to force
17  himself to feign joviality at these moments and, even, to
18  beat someone to the punch in order to present the image of
19  not being bothered by this), s) mental suffering pursuant
20  to WI §15610.53:

21       "Mental suffering means fear, agitation,
          confusion, severe depression or other forms of se-
22        vere emotional distress that is brought about by
          forms of intimidating behavior, threats, harassment,
23        or by deceptive acts performed or false or mislead-
          ing statements made with malicious intent to agi-
24        tate, confuse, frighten or cause severe depression
          or serious emotional distress of the elder or depend-
25        ent adult."

26  t) swelling to left frontal scalp and right temple.

1    142. As a result of the harassment Plaintiff experi-
2    enced between June 30, 2017, and January 8, 2018, at the
3    hands of Defendants Gutierrez, Perez, DOE3 , Caballero,
4    Ramirez, Gudino, Martinez, Shaltry, McClellan, and
5    Quintero, Plaintiff suffered the following physical and
6    mental injuries and distress: a) head contusion, b) head-
7    ache, c) isolation, d) loss of privileges, e) loss of
8    limited freedom, f) harm to reputation, g) ridicule,
9    h) fearfulness, i) exacerbated depression, j) exacerbated
10   anxiety, k) mental suffering pursuant to WI §15610.53,
11   l) post-traumatic stress disorder.

12   143. As a result of their actions on February 28, 2017,
13   Plaintiff has suffered the following physical and mental
14   injuries and distress at the hands of Defendants Gudino,
15   Valles, and Ayala: a) concussion, b) abrasions and/or cuts
16   to bilateral scalp and face, left forehead, bilateral tem-
17   ples, c) headache/facial pain, d) hematoma to left fore-
18   head and bilateral temples, e) swelling to left frontal
19   scalp and right temple, f) heart episode, g) cut to left
20   ear, h) post-traumatic stress disorder, i) nightmares,
21   j) exacerbated depression, k) exacerbated anxiety,
22   l) fearfulness, m) isolation, n) loss of consortium,
23   o) loss of privileges, p) loss of limited freedom,
24   q) disciplinary repurcussions, r) harm to reputation,
25   s) mental suffering pursuant to WI §15610.53.
26                                    /

1     144. As a result of his actions and omissions Plain-
2   tiff suffered the following injuries at the hands of Defen-
3   dant Camacho: a) harassment by those Defendants listed in
4   ¶142 above, b) injuries and distress listed in ¶142 above.
5   ¶142 above is incorporated herein by reference.

6     145. As a result of his actions and omissions Plain-
7   tiff suffered the following injuries at the hands of Defen-
8   dant Shiple: a) harassment by Defendants Gutierrez, Ramirez,
9   Gudino, Shaltry, McClellan and Quintero: b) injuries and
10  distress listed in ¶142 above.  ¶142 above is incorporated
11  herein by reference.

12    146. As a result of their actions and omissions Plain-
13  tiff suffered the following physical and mental injuries
14  and distress at the hands of Defendants Poody, Celaya,
15  Muniz, Jew, DOE1, DOE2: a) harassment by those Defendants
16  listed in ¶142 above, b) injuries and distress listed in
17  ¶142 above. ¶142 above is incorporated herein by reference.

18    147. On September 13, 2017, Plaintiff was given a for-
19  mal diagnosis of post-traumatic stress disorder by his
20  ad-seg clinician, Dr. Judith Osborne, PhD.  This was follow-
21  ing Plaintiff's June 30--August 14, 2017, harassment.
22  Plaintiff believes this PTSD diagnosis was entered as an
23  Axis I diagnosis.  This diagnosis continues to be of note
24  with Plaintiff's clinicians.

25    148. As a result of their acts and omissions as per-
26  formed by their employees, Defendants State of California

1   and CDCR caused Plaintiff to suffer the following physical
2   and mental injuries and distress: a) beating by those De-
3   fendants listed in ¶141 above, b) harassment by those De-
4   fendants listed in ¶142 above, c) injuries as listed in
5   ¶¶141, 142 above.  ¶¶141, 142 are incorporated herein by
6   reference.

7       149.  In all circumstances, events, incidents, etc.
8   mentioned herein the acts and/or omissions of violations
9   of state and federal statutory and constitutional laws,
10  rights, protections and privileges committed by Defendants
11  directly resulted in the injuries suffered by Plaintiff.
12  ¶¶33-148 are realleged by Plaintiff and incorporated herein
13  by reference.

14      150.  Plaintiff is unaware of other prisoners who have
15  been beaten for refusing to communicate with a guard and/or
16  for telling a guard the prisoner doesn't need to be lec-
17  tured by the guard on a specific topic.

18      151.  During the episode of August 9, 2017, with Defen-
19  dant Gutierrez' initial confrontation Plaintiff observed
20  at least one other presumed-mobility impaired prisoner
21  standing, and at the basketball court closest to the can-
22  teen and along the same fence by which Plaintiff stood,
23  and further observed that Defendant Gutierrez passed by
24  this prisoner without confronting him about sitting during
25  an emergency.

26      152.  On February 5, 2018, during a search of Building

First Amended Complaint
18-cv-1376-CRB                    42

1  number 5 on A-Facility, all prisoners were removed from
2  the building, including Plaintiff. When exiting the build-
3  ing Plaintiff was directed by Correctional Officer Cripe
4  to return to his cell and get his ADA vest. When Plain-
5  tiff retrieved his "Hearing Impaired" ADA vest C/O Cripe
6  directed Plaintiff to sit at the table closest to the
7  southernmost pedestrian gate. As Plaintiff made his way
8  to that table he passed by Defendants Shaltry, McClellan
9  and, he believes, Gutierrez. As Plaintiff sat at the table
10 Defendant Shaltry approached the table and spoke to another
11 prisoner. At no time did Defendants Shaltry, Gutierrez,
12 McClellan, or any other Defendant or staff of any sort
13 say anything about sitting on the ground.

14     153.  On the date which Plaintiff believes to have been
15 February 8, 2018, at around 1000 hrs, the yard was "put
16 down" (prisoners required to cease movement and/or sit on
17 the ground, seats, walkers or wheelchairs) due to a medi-
18 cal emergency. Plaintiff observed and counted nine (9)
19 prisoners (including himself) standing during this emer-
20 gency while most other prisoners sat on the ground, in
21 their wheelchairs, or in their walkers. Plaintiff observ-
22 ed that all standing prisoners possessed canes, and that
23 some were wearing vests. Plaintiff observed that some
24 standing prisoners were on the 4/5 yard, some were on the
25 1/3 yard, and some were on the patio. During this 20-minute
26 event there were approximately 15-20 guards on the yard.

1   Plaintiff observed that no staff, including the present-
2   Defendant Shaltry, approached any standing prisoner.
3   Plaintiff also actively observed that during this episode
4   none of the standing prisoners took seats.

5   154.  On February 20, 2018, at about 0930 hrs. there
6   occurred on A-Facility basketball court a fight.  During
7   this emergency, while most other prisoners on the yard
8   sat on the ground, seven (7) prisoners (including Plain-
9   tiff) remained standing, and two (2) prisoners were seat-
10  ed at tables.  During this episode Officers Lord, Villa-
11  fuerte, and Romero walked by Plaintiff in very close prox-
12  imity and made no mention of Plaintiff getting on the
13  ground.  During this episode Defendant Shaltry surveyed
14  the area of the fight, looked directly at Plaintiff as
15  he stood on the basketball court, and Defendant Shaltry
16  said nothing about sitting on the ground.

17  155.  Between Plaintiff's arrival at SVSP, A-Facility,
18  on around March 30, 2016, and June 30, 2017, Plaintiff
19  has constantly been a mobility-impaired ADA prisoner who
20  constantly possesses his cane when out of his cell, and
21  during this period Plaintiff was never instructed, advised
22  or in any other manner whatsoever, told to get on the ground
23  during emergencies, vest or not.  It was not until Plain-
24  tiff's return on June 30, 2017, subsequent to the beating
25  and Plaintiff's related allegation, and the occurrence of
26  the formal investigation that such became an issue.

1      156.  At all times mentioned herein the following De-
2   fendants were peace officers pursuant to PC Part 2, Title
3   3, Ch. 4.5, who were performing their duties as such:
4   Gutierrez, Perez, Celaya, Aboytes, Caballero, J. Ramirez,
5   Valles, Gudino, Ayala, Martinez, Poody, Velasquez, Shaltry,
6   McClellan, Quintero, Ramirez, DOE3.

7      157.  To the best of Plaintiff's knowledge, at all times
8   mentioned herein Defendant F. Vasquez was a peace officer
9   pursuant to PC Part 2, Title 3, Ch. 4.5, except for--at
10  least--the period between June 30, 2017, and October 5,
11  2017, when Defendant Vasquez was, Plaintiff is informed,
12  on suspension from his duties with the CDCR.  At all times
13  mentioned herein when Defendant Vasquez was a peace officer
14  he was performing his duties as such.

15

16  V. CAUSES OF ACTION.

17      158.  Plaintiff realleges and incorporates by reference
18  paragraphs 1 thru 157.

19      159.  CRUEL AND UNUSUAL PUNISHMENT:

20      a. Defendants Gutierrez, Perez, Aboytes, Caballero, J.
21  Ramirez, Valles, Gudino, Vasquez, Ayala, Martinez, Poody,
22  Shaltry, McClellan, and Quintero violated Plaintiff's right
23  to be free from cruel and unusual punishment pursuant to
24  the U.S. Constitution's Eighth Amendment when they entered
25  into a concerted effort at collusion in a conspiracy against
26  Plaintiff in violation of PC 182(a)(1), and (5), and 42

1   U.S.C. 1985, and did so with malicious intent, with delib-
2   erate indifference, and with conscious disregard for Plain-
3   tiff and/or their actions;

4       b. Defendants Gutierrez, Aboytes, Ayala, Caballero,
5   J. Ramirez, Vasquez, Velasquez, and Gudino violated Plain-
6   tiff's right to be free from cruel and unusual punishment
7   pursuant to the U.S. and California Constitutions, Eighth
8   Amendment and Article 1, §17, respectively, PC §§673 and
9   2652, when they failed to intervene in the beating of
10  Plaintiff, and in violation of CCR §3268.1(c), and did
11  so with malicious intent, with deliberate indifference,
12  and with conscious disregard for Plaintiff and/or their
13  actions;

14      c. Defendants Gutierrez, Aboytes, Caballero, J. Ramirez,
15  Vasquez and/or Velasquez violated Plaintiff's right to be
16  free from cruel and unusual punishment pursuant to the U.S.
17  and California Constitutions, Eighth Amendment and Article
18  1, §17, respectively, PC §§673 and 2652, when Defendants
19  struck Plaintiff without legal justification in a malicious
20  and sadistic manner, and/or when the Defendants acted to
21  subdue Plaintiff without legal justification for the sake
22  of "piling on" and/or showing their esprit de corps mali-
23  ciously and sadistically, and with wanton and reckless
24  disregard for Plaintiff and in violation of California
25  Civil Code (CC) §50, and CCR §3268(b);
26                              /

First Amended Complaint
18-cv-1376-CRB                    46

1    d. Defendants Gutierrez, Perez, Aboytes, Caballero, J.

2  Ramirez, Valles, Gudino, Vasquez, Ayala, Martinez, Velas-

3  quez, Shaltry, McClellan, Quintero, Ramirez, when commit-

4  ting dependent adult abuse against Plaintiff in the course

5  of committing any other crime or violation against Plain-

6  tiff violates Plaintiff's right to be free from cruel and

7  unusual punishment under the U.S. and California Constitu-

8  tions, Eighth Amendment and Article 1, §17, respectively, and

9  PC §§673 and 2652, which they did maliciously and sadisti-

10  cally, with deliberate indifference, with wanton and reck-

11  less disregard for Plaintiff, and/or willfully and deliber-

12  ately in violating PC §368;

13    e. Defendants State of California, CDCR, Gutierrez,

14  Aboytes, Caballero, J. Ramirez, Gudino, Vasquez, Ayala,

15  and/or Velasquez, with deliberate indifference, wanton

16  disregard, and/or knowingly and maliciously violated Plain-

17  tiff's right to be free from cruel and unusual punishment

18  under the U.S. and California Constitutions, Eighth Amend-

19  ment and Article 1, §17, respectively, and PC §§673 and

20  2652 when they and/or their employees failed to summon

21  medical care for Plaintiff and violating GC §§844.6(a) and

22  845.6, and WI §15610.57(b)(2).  This violation by Defen-

23  dants is especially heinous in that Defendants had the

24  entire "two-minute warning" in which to decide to assist

25  Plaintiff, apparently decided to  not summon medical care

26  as Plaintiff writhed on the floor in front of them and,

1   thus, opened the door for the subsequent beating for, had
2   any Defendant summoned medical help while the Defendant who delivered
3   the warning was away from the gym, the opportunity to beat Plaintiff
4   would likely have been foreclosed;

5       f. Defendants Gutierrez, Perez, Caballero, Vasquez,
6   Martinez, Shaltry, McClellan, Quintero and Ramirez inflict-
7   ed upon Plaintiff cruel and unusual punishment through
8   both their individual and common patterns and practices
9   of repeated harassment and intimidation of Plaintiff over
10  the six weeks between Plaintiff's initial June 30, 2017,
11  return to A-Facility and his August 14, 2017, placement
12  in ad seg for safety concerns, and then again for Defen-
13  dants Shaltry, McClellan, Ramirez and also Gudino during
14  the January 8, 2018, harassment and $3\frac{1}{2}$-hour placement in
15  the cage, and doing so with malicious intent, willfully,
16  and with deliberate indifference, and also with the falsi-
17  fication and misclassification of Plaintiff during his
18  time in ad-seg between August 24, 2017, and October 5,
19  2017, being carried out by Defendant Quintero.  Such in-
20  fliction of cruel and unusual punishment was carried out
21  through the acts and omissions of Defendants violating
22  various standards of conduct in support of their effort
23  to prevent or dissuade a victim and witness from attending
24  or giving testimony, and/or otherwise providing information
25  of the crimes of some Defendants. in violation of PC §136.1
26  (a)(2); and thus deprived Plaintiff's 14th Amendment rights
27  under the U.S. Constitution.

1       g. Defendant Gutierrez, with malicious and sadistic
2   intent, and with concious disregard for Plaintiff and/or
3   his actions, inflicted cruel and unusual punishment upon
4   Plaintiff in his effort to dissuade Plaintiff from conti-
5   nuing with his complaint against Defendant Gutierrez, doing
6   so against Plaintiff's right to be free from such cruel
7   and unusual punishment pursuant to the U.S. and California
8   Constitutions, Eighth Amendment and Article 1, §17, re-
9   spectively, as well as PC §§673 and 2652, and this being
10  done in the course of violating PC §136.1(c)(1);

11      h.  In furtherance of their common scheme at collu-
12  sion and conspiracy Defendants Gutierrez, Perez, Caballero,
13  Martinez, Shaltry, McClellan, Quintero, and Ramirez viola-
14  ted Plaintiff's right to be free from cruel and unusual
15  punishment under the U.S. and California Constitutions,
16  Eighth Amendment and Article 1, §17, respectively, as well
17  as PC §§673 and 2652, by and through their actions to dis-
18  suade Plaintiff in violation of PC §136.1(c)(2);

19      **160.**  FREEDOM OF SPEECH:

20      a.  Defendants, collectively and individually, alone
21  and in concert, violated Plaintiff's right to freedom of
22  speech and/or expression by their harmful and injurious
23  acts and/or omissions committed, in part, because of Plain-
24  tiff exercising such rights under the U.S. Constitution's
25  First Amendment.  Defendants' harmful and injurious acts
26  and/or omissions were devoid of any valid penological

1  interest and caused Plaintiff to refrain from expressing
2  himself in situations wherein he believed he should and
3  needed to speak up, and in which he believed he had the
4  right to do so, but which presented a danger to Plaintiff
5  for repeat treatment in circumstances similar to that which
6  he faced previously.  Defendants' acts and/or omissions
7  included the following:

8      b. Defendant Valles' handcuffing, having Plaintiff
9  placed in cage, and the resultant beating for Plaintiff
10 requesting medical care. (¶42);

11     c. Defendant Gutierrez' deprived, retaliated against,
12 and thus violated Plaintiff's right for stating he does
13 not need for Defendant Gutierrez to lecture him. (¶¶47,
14 57-59);

15     d. Defendant Vasquez deprived, retaliated against,
16 and thus violated Plaintiff's right for stating he does
17 not wish to converse with Defendant. (¶¶43,44, 57-59);

18     e. Defendant Martinez' ordering Plaintiff to be put
19 into a cage for Plaintiff's choosing to not respond to
20 Defendant's taunts. (¶84);

21     f. Defendant Quintero's falsification of a state docu-
22 ment related to Plaintiff by imposing upon Plaintiff dele-
23 terious conditions comparable to one under disciplinary
24 detention and by making libelous remarks against Plain-
25 tiff for, in part, making a legitimate complaint against
26 his colleagues, violating Plaintiff's right to petition.

1    (¶123);

2        g. Defendants McClellan and Shaltry placing of  Plain-
3    tiff in a cage, strip-searching, leaving with no clothing,
4    providing no water and no restroom, and all for 3½ hours
5    for Plaintiff's refusal/declination to engage with Defen-
6    dants in a verbal debate.  (¶¶127, 128);

7        h. Defendant Shaltry by intimidating, attempting to
8    dissuade, and implicity threatening Plaintiff simply for
9    Plaintiff debating with Defendant Shaltry the demerits of
10   the Defendant's position, and doing so in a non-threaten-
11   ing, and non-disruptive manner. (¶113);

12       i. Defendant Ramirez by acting in concert with Defen-
13   dants McClellan and Shaltry in placing and leaving Plain-
14   tiff in a cage for 3½ hours without clothing, water, and
15   the use of a restroom, and strip-searching Plaintiff for
16   debating with Defendants in a non-threatening and non-dis-
17   ruptive manner. (¶¶127, 128);

18   **161.**  PERSONAL SAFETY--DUE PROCESS OF LAW:

19       a. Defendants, collectively and individually, alone
20   and  in   concert, violated Plaintiff's right to personal
21   safety and security, and due process under the U.S. Con-
22   stitution's Fourth and Fourteenth Amendments, and did so
23   by their harmful and injurious acts and/or omissions commit-
24   ted while Plaintiff exercised and/or enjoyed his constitu-
25   tional rights and/or rights and privileges under various
26   statutes.  Defendant's acts and omissions were devoid

1 of any valid penological interest. Defendants' acts and/or
2 omissions, collectively and/or individually, were committed
3 with deliberate indifference and/or with wanton and mali-
4 ciously sadistic intent and/or with willful and conscious
5 disregard for Plaintiff and/or their acts and/or omissions.
6 By and through Defendants' actions Defendants, individually
7 and collectively in concert and alone, instilled in Plaintiff
8 a sense of fear, dread, anxiety, and mental anguish as well
9 as physical injury as previously referred. Defendants' acts
10 and/or omissions include the following:

11    b. Defendants Gutierrez, Aboytes, Caballero, J. Ramirez,
12 Vasquez and Velasquez, used unnecessary force and committed
13 battery against Plaintiff. [¶¶57-59];

14    c. Defendant Caballero illegally restrained Plaintiff
15 and placed Plaintiff in a cage and strip-searched Plaintiff.
16 [¶98];

17    d. Defendant Valles' handcuffing, and causing Plain-
18 tiff to be placed into a cage and strip-searched without
19 justifiable cause. [¶42-43];

20    e. Defendant Muniz' failure to maintain the codified
21 standard for his personal responsibility to Plaintiff pur-
22 suant to CCR §§3271 and 3380(a), and in his apparent fail-
23 ure to conduct statutorily-required Use of Force Reviews
24 pursuant to CCR §§3268 et seq., and 3084.9(i)(5), thus send-
25 ing a clear message to subordinate staff that uses of force-
26 even those resulting in serious bodily injury-will not be

1   scrutinized. [¶¶76-78];

2       f. Defendant Martinez' causing Plaintiff to be caged

3   and strip-searched for Plaintiff's refusal/declination to

4   engage in a verbal confrontation. [¶84];

5       g. Defendant Poody's failure to implement Use of Force

6   Review protocols. [¶77];

7       h. Defendants Shaltry and McClellan's causing Plain-

8   tiff's caging and strip-search, and for 3½ hours without

9   water and use of restroom. [¶¶127-138];

10      i. Defendant Shaltry's implicit threat to Plaintiff.

11  [¶113];

12      j. Defendant Quintero's documentation of false, dero-

13  gatory, demeaning and  detrimental statements. [¶123];

14      k. Defendants Gutierrez, Aboytes, Caballero, J. Ramirez,

15  Vasquez, Ayala, and Gudino's creation and submission of

16  false crime/incident reports. [¶74];

17      l. Defendants Gutierrez, Aboytes, Caballero, Vasquez,

18  J. Ramirez, Ayala, and/or Gudino's failure to intervene

19  in the beating of Plaintiff, as well as that of Defendant

20  Velasquez. [¶60];

21      m. Defendants Gutierrez, Perez, Aboytes, Caballero,

22  J. Ramirez, Valles, Gudino, Vasquez, Ayala, Martinez,

23  Velasquez, Shaltry, McClellan, Quintero and Ramirez, when

24  they committed abuse against a dependent adult, namely,

25  Plaintiff. [Facts ¶¶ are provided respective to the Defen-

26  dants, and are separated by ";": 53,57-59, 60, 74, 75, 82,

1   91, 108, 112, 115-116, 118; 80; 53, 57-59, 60, 74; 53, 57-
2   59, 60, 74, 89-90, 96-102, 118, 126; 127-138; 42; 53, 57-
3   59, 60, 74; 43-44, 53, 57-59, 60, 74; 43-44, 53, 57-59,
4   60, 74; 84, 120; 53, 57-59, 60; 109-110, 113, 118-119, 127-
5   134; 118, 127-134; 120, 123; 127-134];

6       n. Defendants State of California, CDCR, Gutierrez,
7   Aboytes, Caballero, J. Ramirez, Gudino, Vasques, Ayala,
8   Velasquez' failure to summon medical care for Plaintiff.
9   [¶53];

10      o. Defendants Gutierrez, Ayala, Celaya, Aboytes,
11  Caballero, J. Ramirez, Valles, Gudino, Vasquez,
12  Martinez, Velasquez, and Muniz' failure to keep Plaintiff
13  free from violence. [Facts ¶¶ are provided respective to
14  the Defendants, and are separated by ";": 53, 57-59; 43-
15  44, 53, 57-59; 76, 78; 53, 57-59; 53, 57-59, 96-102; 127-
16  138; 42; 53, 57-59; 43-44, 53, 57-59; 84,120; 53, 57-59;
17  76, 78];

18      o-1. Defendants State of California and CDCR's fail-
19  ure to keep Plaintiff free from violence. [¶53];

20      p. Defendants Gutierrez, Perez, Celaya, Aboytes,
21  Caballero, J. Ramirez, Valles, Gudino, Vasquez, Ayala,
22  Martinez, Poody, Velasquez, Shaltry, McClellan and
23  Quintero's failure to keep safe custody of Plaintiff.
24  [Facts ¶¶ are provided respective to the Defendants, and
25  are separated by ";": 57-59, 60, 115-116, 118; 80; 76, 78;
26  57-59, 60; 57-59, 60, 101; 57-59, 60; 42; 57-59, 60; 42-

1   44, 57-59, 60; 42-44, 57-59, 60; 120; 77; 57-59, 60; 119;

2   119; 120,122];

3       q. Defendants Celaya, Hughes, DOE1, DOE2's failure

4   to conduct required Use of Force Reviews, and including

5   Defendant Muniz. [¶¶76, 78];

6       r. Defendants Gutierrez, Aboytes, Caballero, Vasquez,

7   J. Ramirez, and Velasquez' committing battery against a

8   dependant adult, namely, Plaintiff. [¶¶57-59, [¶101-Defen-

9   dant Caballero, additionally]];

10      s. Defendants Valles, Gutierrez, J. Ramirez, Ayala,

11  Aboytes, Caballero, Velasquez, Gudino, and Vasquez' causing

12  and/or permitting Plaintiff to be placed in a situation

13  where Plaintiff's person and/or health was endangered.

14  [Defendant Valles--¶42; Others--¶¶53, 57-59];

15  **162.** DUE PROCESS OF LAW:

16      a. Defendants Gutierrez, Aboytes, Caballero, Vasquez,

17  J. Ramirez, and Velasquez violated Plaintiff's right to

18  due process under the U.S. Constitution's Fourteenth Amend-

19  ment when they committed battery against Plaintiff [¶57-

20  59], when they used unnecessary force against Plaintiff

21  [¶57-59], and when they filed false crime reports against

22  Plaintiff [¶74];

23      b. Defendants Perez, Celaya, Hughes, Poody, Muniz,

24  DOE1, and DOE2 violated Plaintiff's right to due process

25  under the U.S. Constitution's Fourteenth Amendment when

26  they failed to implement and/or conduct Use of Force

1    protocols and reviews. [¶¶76-78];

2         c. Defendants Gudino, Quintero, Caballero and Camacho
3    violated Plaintiff's right to due process when they wrote
4    and submitted false documents regarding and against Plain-
5    tiff. [¶74--Defendants Gudino and Camacho; ¶123--Defendant
6    Quintero; ¶126--Defendant Caballero];

7         d. Defendants Valles, Martinez, Shaltry, and McClellan
8    violated Plaintiff's right to due process when they caused
9    Plaintiff to be placed in a cage for illegal and unjusti-
10   fiable reasons and for the purpose of punishment for imag-
11   ined wrongs not amounting to rules violations nor program
12   disruptions. [¶42--Defendant Valles; ¶¶83-86--Defendant
13   Martinez; ¶¶127-134--Defendants Shaltry and McClellan];

14        e. Defendants Gudino and Ayala violated Plaintiff's
15   right to due process when they wrote and/or provided false
16   documents for crime reports against Plaintiff. [¶74];

17        f. In violating Plaintiff's due process rights as
18   described in ¶¶a. through e. above, Defendants did so in
19   violation of the U.S. Constitution's Fourteenth Amendment.

20   **163.**  CONSPIRACY:

21        Defendants Gutierrez, Perez, Aboytes, Caballero, Valles,
22   J. Ramirez, Gudino, Vasquez, Ayala, Martinez, Poody, Shal-
23   try, McClellan, and Quintero violated 42 U.S.C.§§1985, 1986,
24   PC §182(a)(1), and (5) against Plaintiff when collectively
25   and/or in concert with one or more other Defendants, and/or
26   individually for the purpose of assisting one or more other

1   Defendants, they willfully and with deliberate indiffer-
2   ence, malicious intent, and conscious and reckless disre-
3   gard for Plaintiff and/or their acts and omissions deprived
4   Plaintiff of his statutory and constitutional rights, and
5   conspired to and/or took action to further a conspiracy
6   to conceal unlawful actions of Defendants. [Facts ¶¶ are
7   provided respectively to the Defendants, and are separated
8   by ";": 74, 91, 115, 116, 118; 80; 74, 75; 74, 75, 89, 90,
9   96, 118, 126; 42; 74, 75; 74, 75, 127; 74, 75; 74, 75; 84;
10  77; 113, 127-134; 127-134; 123];

11      164.  BATTERY:

12      Defendants Gutierrez, Aboytes, Caballero, Vasquez,
13  J. Ramirez and Velasquez did willfully, maliciously and
14  sadistically, and with wanton and reckless disregard for
15  Plaintiff's health, welfare, and safety, commit battery
16  against Plaintiff in violation of PC §242, §243(d), and
17  the U.S. Constitution's Eighth Amendment and the Califor-
18  nia Constitution's Article 1, §17 prohibition against the
19  infliction of cruel and unusual punishment on Plaintiff,
20  and they did so absent any legitimate penological interest
21  and with the sole intent of causing harm to Plaintiff.
22  [¶¶57-59 [¶101--Defendant Caballero, additionally]];

23      165.  ACCESSORIES TO (individual crimes):

24      All Defendants are accessories to all violations com-
25  mitted by Defendants Gutierrez, Aboytes, J. Ramirez, Caba-
26  llero, Gudino, Vasquez, Ayala, and Velasquez as delineated

1    within this Complaint by their willful, malicious and sa-
2    distic, intentional, outrageous, and deliberatly indiffer-
3    ent acts and/or omissions to participate in the violations
4    of the named Defendants, and thus assist them in their
5    crimes against Plaintiff, violating PC §32;

6    **166.** ACCESSORIES TO (UOF protocols & reviews):

7        Defendants Perez, Martinez, Poody and Quintero are
8    accessories to the commission of battery (PC 242, 243(d);
9    U.S. Constitution, Eighth Amendment; California Constitution
10   Article 1, §17), deprivation of rights (29 U.S.C. 794;
11   CC 43), use of unnecessary force (CC 50; CCR 3268(b)),
12   dependent adult abuse (PC 368), failure to summon medical
13   care (U.S. Constitution, Eighth Amendment; GC 814, 844.6(a),
14   845.6; and WI 15610.57(b)(2)), dissuading and intimidating
15   a victim and witness (PC 136.1(a)(2)), dissuading and inti-
16   midating a victim and witness especially with force or ex-
17   press/implied force (PC 136.1(c)(1)), dissuading and intimi-
18   dating a victim and witness in furtherance of a conspiracy
19   (PC 136.1(c)(2)), civil conspiracy (Sharmalee Goonewardene
20   v ADP, LLC et al., 2016 DJDAR 11110, fn. 11), battery against
21   a dependent adult (PC 243.25), dependent adult endangerment
22   (PC 368(b)(1); U.S. Constitution, Eighth and Fourteenth
23   Amendments), intentional infliction of emotional distress
24   (Giraldo v CDCR (2008) 168 Cal. App. 4th 231, 245-253, 85
25   Cal Rptr. 3d 371), the Bane Civil Rights Act (CC 52, 52.1),
26   prisoner brutality (PC 147), false reporting of crime

1   (PC 148.5(b)), and interference with civil rights (PC 422.6),
2   committed by Defendant(s) Gutierrez, and/or Caballero, and/or
3   Aboytes, and/or J. Ramirez, and/or Vasquez, and/or Gudino,
4   and/or Velasquez, and/or Martinez, and/or Shaltry, and/or
5   McClellan, and/or Quintero, and/or Ramirez, and/or Ayala,
6   and/or Perez, and/or Valles, and/or Celaya, and/or Hughes,
7   and/or Muniz, and/or DOE1, and/or DOE2, and/or DOE3, and/or
8   Camacho, and/or Jew, and/or Shiple, and/or State of Califor-
9   nia, and/or CDCR, by and through their individual and/or
10  collective failure to implement and abide by Use of Force
11  protocols and Reviews pursuant to CCR §§3268-3268.1, and
12  committed by the Defendants with deliberate indifference,
13  malicious intent, and a conscious and reckless disregard
14  for Plaintiff and their acts and omissions; violating PC §32;

15      167.  CONCEALMENT:

16      Defendants Gutierrez, Perez, Celaya, Aboytes, Caballero.
17  J. Ramirez,  Valles, Gudino, Vasquez, Ayala, Martinez,
18  P o o d y,  Velasquez, and Quintero, violated Plaintiff's
19  rights to due process and equal protection of the law under
20  the U.S. Constitution's Fourteenth Amendment, as well as
21  violated  his right  to be free from cruel and unusual pun-
22  ishment under the U.S. Constitution's Eight Amendment, and
23  under the California Constitution's Article 1, §17 when
24  they willfully, maliciously, with deliberate indifference
25  and conscious disregard for Plaintiff and/or their acts
26  and omissions failed to act in accordance with their obli-

1    gations under CCR §§3268-3268.1 to attempt to stop any wit-
2    nessed use of unnecessary force and to report any allega-
3    tion of the use of unnecessary force, with such failure
4    violating 42 U.S.C. §§1985(c) and 1986. [¶¶57-59; 140];

5    **168.** DERELICTION OF DUTY:

6        Defendants Poody, Jew, and Shiple violated Plaintiff's
7    right to due process and equal protection under the law
8    under the U.S. Constitution's Fourteenth Amendment, and
9    subjected Plaintiff to further infliction of cruel and un-
10   usual punishment in violation of the U.S. Constitution's
11   Eighth Amendment and the California Constitution's Article 1,
12   §17 and PC §§673 and 2652, when they willfully, with deli-
13   berate indifference, and with conscious disregard for Plain-
14   tiff and/or their acts and omissions, when they failed to
15   report an allegation of the use of unnecessary force as
16   mandated under CCR §3268.1(c). [¶¶77, 106, 105 respectively];

17   **169.** FALSIFYING DOCUMENTS:

18       Defendants Gudino, Quintero, Caballero, Camacho,
19   Gutierrez, Aboytes, J. Ramirez, Vasquez and Ayala, engaged
20   in activity incompatible with CDCR employment by partici-
21   pating in illegal activity pursuant to PC §118.1, and/or
22   when they published, transmitted and caused to be display-
23   ed intentionally false and defamatory crime reports and
24   material using CDCR computers in a willful, deliberate,
25   and malicious action against Plaintiff, and in violation
26   of CCR §3413(a)(6)(A)(1), (2) and, thus, subjected Plain-

1   tiff to cruel and unusual punishment in violation of the
2   U.S. Constitution's Eighth Amendment, to the denial of
3   due process rights pursuant to the U.S. Constitution's
4   Fourteenth Amendment, to cruel and unusual punishment in
5   violation of the California Constitution's Article 1, §17,
6   and PC §673, and PC §2652, to the freedom of speech denial
7   under the U.S. Constitution's First Amendment, and to the
8   violation of his personal security under the U.S. Consti-
9   tution's Fourth Amendment. Plaintiff was subjected by De-
10  fendant's actions to the deprivation of his rights in vio-
11  lation of 29 U.S.C. §794, and CC §43, to violation of his
12  rights under the Bane Civil Rights Act, CC §§52, 52.1,
13  and to the interference of Plaintiff's civil rights in
14  violation of PC §422.6. [¶¶123-Quintero; 74-All others];
15  **170.  FALSE CRIME REPORTS:**

16      Defendants Gutierrez, Aboytes, Caballero, Ayala,
17  J. Ramirez, Gudino, Vasquez, and Camacho submitted falsi-
18  fied crime reports and falsified documents for inclusion
19  in a crime report in violation of PC §118.1, and CCR §3413
20  (a)(6)(A)(1), and (2), and they did so with deliberate in-
21  difference, intentionally and with malicious intent to
22  violate Plaintiff's rights, protections and privileges
23  of due process, equal protection, and against the inflic-
24  tion of cruel and unusual punishment under the U.S. Con-
25  stitution's Fourteenth Amendment, and Eighth Amendment,
26  respectively. Their actions further led and resulted in

1   the violation of Plaintiff's personal security against

2   the U.S. Constitution's Fourth Amendment, the deprivation

3   of Plaintiff's rights in violation of 29 U.S.C. §794 and

4   CC §43.  Defendants' acts and omissions violated 42 U.S.C.

5   §1986, as well as the Bane Civil Rights Act, CC §§52, 52.1,

6   Plaintiff's protection against  prisoner brutality under

7   PC §147, and the interference of Plaintiff's civil rights

8   in violation of PC §422.6. [¶74];

9   **171.**  DEPRIVATION OF RIGHTS:

10   Defendants, by and through their willfull, malicious,

11   deliberately indifferent, wanton and callous acts and omis-

12   sions done in conscious disregard for Plaintiff and their

13   acts and omissions as described herein, deprived Plaintiff

14   of his rights as described herein in violation of 29 U.S.C.

15   §794;

16   **172.**  USE OF UNNECESSARY FORCE:

17   Defendants Gutierrez, Aboytes, Caballero, Vasquez,

18   J. Ramirez, Velasquez, violated Plaintiff's rights against

19   the use of unnecessary force when they used unnecessary

20   force willfully, with malicious and sadistic intent against

21   Plaintiff in violation of CC §50, and CCR §3268(b).  This

22   use of force occurred for no other reason than to inflict

23   pain and harm on Plaintiff, and had no basis in any valid

24   penological interest whatsoever. [¶¶57-59, 101];

25   **173.**  FAILURE TO INTERVENE:

26                           /

1   Defendants Gutierrez, J. Ramirez, Aboytes, Ayala, Gudino,
2   Caballero, Vasquez and/or Velasquez individually and inten-
3   tionally, maliciously, and with deliberate indifference,
4   violated Plaintiff's right to staff assistance pursuant
5   to CCR §3268.1(c) when they failed to intervene in beating
6   of Plaintiff.  In their failure to come to the aid of Plain-
7   tiff pursuant to the above regulation Defendants, further
8   subjected and effectively inflicted upon Plaintiff cruel
9   and unusual punishment in violation of Plaintiff's right
10  to be free from cruel and unusual punishment under the U.S.
11  Constitution's Eighth Amendment. [¶60];

12  **174.**   DEPENDANT ADULT ABUSE:

13      Defendants Gutierrez, Perez, Aboytes, Caballero,
14  J. Ramirez, Valles, Gudino, Vasquez, Ayala, Martinez,
15  Velasquez, Shaltry, McClellan, Quintero, and Ramirez,
16  and DOE3 committed dependent adult abuse against Plaintiff
17  willfully, and with malicious intent, and/or sadistically,
18  and with deliberate indifference, and/or in conscious and
19  reckless disregard for Plaintiff and/or their acts and/or
20  omissions, and/or with the wanton infliction of harm and/or
21  humiliation  and/or fear and/or pain and/or mental and phy-
22  sical injury, in violation of PC §368 when they committed
23  conspiracy in violation of 42 U.S.C. §1985(c), §1986,
24  PC §182(a)(1), and (5); and/or when they falsified docu-
25  ments against Plaintiff in violation of CCR §3413(a)(6)(A)
26  (1), and (2); and/or when they filed a false crime report

1    against Plaintiff in violation of PC §§118.1, 148.5(b),

2    and CCR §3413(a)(6)(A)(1), and (2); and/or when they de-

3    prived Plaintiff of his rights in violation of 29 U.S.C.

4    §794, and PC §422.6; and/or when they used unnecessary force

5    against Plaintiff in violation of CC §50, and CCR §3268(b);

6    and/or when they failed to intervene in their witnessed

7    use of unnecessary force against Plaintiff, pursuant to

8    CCR §3268.1(c); and/or when they failed to summon medical

9    care for Plaintiff pursuant to and/or in violation of

10   WI §15610.57, GC §§814, 844.6(a), and 845.6; and/or when

11   they acted to dissuade, intimidate, and/or prevent Plain-

12   tiff from reporting and/or providing crime information

13   and/or with force or express/implied force and/or in fur-

14   therance of a conspiracy in violation of PC §§136, 136.1

15   (c)(1), 136.1(c)(2), respectively; and/or when they failed

16   to keep safe custody of Plaintiff pursuant to CCR §3271;

17   and/or when they failed to keep Plaintiff free from vio-

18   lence pursuant to CC §51.7; and/or when they committed bat-

19   tery against Plaintiff, a dependent adult, in violation

20   of PC §243.25; and/or when they placed Plaintiff, a depen-

21   dent adult, in a situation wherein Plaintiff's person and

22   health was endangered in violation of PC §368(b)(1); and/or

23   when they intentionally inflicted emotional distress on

24   Plaintiff pursuant to WI §15610.53; and/or when they commit-

25   ted libel against and subjected Plaintiff to personal in-

26   sult and defamation in violation of CC §43; and/or when

1    they inflicted upon Plaintiff cruel and unusual punishment
2    in violation of the U.S. Constitution, Eighth Amendment,
3    and the California Constitution, Article 1, §17, and
4    PC §§673 and 2652; and/or when they violated Plaintiff's
5    equal protection rights under U.S. Constitution, Four-
6    teenth Amendment; and/or when they interfered with Plain-
7    tiff's exercise and enjoyment of his state and federal con-
8    stitutional rights in violation of CC §52.1; and/or when
9    they committed willful inhumanity and oppression against
10   Plaintiff in violation of PC §147; and/or when they com-
11   mitted assault and battery against Plaintiff in violation
12   of PC §149, and did so with willful, conscious, and mali-
13   cious deliberate indifference: and/or when they committed
14   battery against Plaintiff in violation of the U.S. Consti-
15   tution's Eighth Amendment, PC §§242, 243(d). [Facts ¶¶ are
16   in respective order of named violations beginning with that
17   of "conspiracy" on line 23 of p. 63: ¶163; ¶169; ¶170;
18   ¶¶171, 193; ¶172;, ¶173; ¶175; ¶¶177, 178, 179; ¶180;
19   ¶181; ¶184; ¶¶185, 186; ¶187; ¶176; ¶159; ¶188; ¶189;
20   ¶191; ¶164];

21   **175.**   **FAILURE TO SUMMON MEDICAL CARE:**

22       Defendants State of California, CDCR, Gutierrez,
23   J. Ramirez, Aboytes, Caballero, Gudino, Vasquez, Ayala, and
24   Velasquez, failed to summon and/or provide medical care
25   to Plaintiff when they were aware of Plaintiff's apparent
26   need for medical attention, and when they were aware that

1  Plaintiff was afflicted with both physical and mental health
2  conditions.  Defendants' failure to summon and/or provide
3  medical care and help as Plaintiff writhed on the floor
4  prior to his beating was so harmful as to evidence, by De-
5  fendants, deliberate indifference to Plaintiff's serious
6  medical needs, and was done in violation of the U.S. Con-
7  stitution's Eighth Amendment prohibition against cruel and
8  unusual punishment, as well as that of the California Con-
9  stitution's Article 1, §17, and in violation of PC §2652,
10  GC §§814, 844.6(a), and 845.6, and WI §15610.57(b)(2).
11  This omission by Defendants demonstrates a conscious dis-
12  regard for Plaintiff and is a wanton and unnecessary in-
13  fliction of pain upon Plaintiff. [¶53];

14  **176.**   LIBEL:

15      Defendants Caballero, J. Ramirez, Gutierrez, Aboytes
16  and Quintero violated Plaintiff's right of protection from
17  personal insult and defamation pursuant to CC §43, and did
18  so purposefully and with deliberate indifference and with
19  malicious intent to portray Plaintiff as an assailant of
20  Correctional Officers, and that Plaintiff makes false alleg-
21  ations. [¶¶74; ¶123--Defendant Quintero; ¶126, addition-
22  ally for Defendant Caballero];

23  **177.**   PREVENTING/DISSUADING VICTIM OR WITNESS:

24      Defendants Gutierrez, Perez, Caballero, Gudino,
25  Martinez, Shaltry, McClellan, Quintero, and Ramirez know-
26  ingly and maliciously attempted to dissuade and prevent

1   Plaintiff from further providing information and/or testi-
2   mony in an inquiry into the abuse of Plaintiff by certain
3   Defendants, and did so in violation of PC §136.1(a)(2).
4   [Facts ¶¶ are provided respectively to the Defendants, and
5   are separated by ";": ¶¶82, 91, 108, 112, 118; ¶80; ¶¶89,
6   90, 96-101, 118, 126;    ¶ ¶ : 1 2 7 - 1 3 4     ; ¶¶84,
7   120; ¶¶109, 110, 113, 119, 127-134; ¶¶119, 127-134; ¶¶120,
8   122, 123; ¶¶127-134];

9       **178.**   DISSUADING WITH FORCE:

10      Defendant Gutierrez, by use of an express and/or im-
11  plied use of force and violence against Plaintiff, knowing-
12  ly and maliciously attempted to dissuade and prevent Plain-
13  tiff from further providing information and/or testimony
14  in  an   inquiry into the abuse of Plaintiff by certain De-
15  fendants, including Defendant Gutierrez, in violation of
16  PC §136.1(c)(1). [¶¶115-116];

17      **179.**   DISSUADING IN CONSPIRACY:

18      Defendants Gutierrez, Perez, Caballero, Martinez,
19  Shaltry, McClellan, Quintero and Ramirez, in furtherance
20  of a common plan, design and/or scheme, knowingly and mali-
21  ciously committed against Plaintiff the crime of attempting
22  to prevent or dissuade Plaintiff--in furtherance of a con-
23  spiracy--from further providing information and/or testi-
24  mony in an inquiry into the abuse of Plaintiff by certain
25  Defendants including Gutierrez, and Caballero. [Facts ¶¶
26  are provided respectively to the Defendants, and are

1  separated by ";": ¶¶82, 108, 112, 115, 116, 118; ¶80;
2  ¶¶89, 90, 96, 98-101, 118; ¶¶84, 120; ¶¶113, 118, 119,
3  127-134; ¶¶118, 119, 127-134; ¶¶120, 122; ¶¶127-134];

4  **180.**  FAILURE TO KEEP SAFE CUSTODY:

5  Defendants Gutierrez, Perez, Celaya, Aboytes, Valles,
6  Caballero, J. Ramirez, Gudino, Vasquez, Ayala, Martinez,
7  Poody, Muniz, Velasquez, Shaltry, McClellan and Quintero
8  willfully, with deliberate indifference and conscious dis-
9  regard for Plaintiff and/or with a malicious and sadistic
10 intent, failed to keep safe custody of Plaintiff pursuant
11 to CCR §3271, by and through their collective and indivi-
12 dual actions. [Facts ¶¶ are provided respectively to the
13 Defendants, and are separated by ";": ¶¶57-59, 60, 115,
14 116, 118; ¶78;  ¶¶76, 78; ¶¶57-59, 60; ¶42; ¶¶57-59, 60,
15 101, 118; ¶¶57-59, 60; ¶¶57-59, 60; ¶¶57-59, 60; ¶¶57-59,
16 60; ¶120; ¶77; ¶¶76, 78; ¶¶57-59, 60; ¶¶118, 119; ¶¶118,
17 119; ¶¶120, 122];

18 **181.**  FREEDOM FROM VIOLENCE:

19 Defendants Gutierrez, Perez, Celaya, Aboytes, Valles,
20 Caballero, J. Ramirez, Gudino, Vasquez, Ayala, Martinez,
21 Poody, Muniz, Velasquez, Shaltry, McClellan and Quintero,
22 through their acts and omissions, collectively and/or in-
23 dividually, willfully, maliciously, with deliberate indif-
24 ference and wanton disregard for Plaintiff, failed to keep
25 Plaintiff free from violence pursuant to and/or in viola-
26 tion of the U.S. Constitution, Eighth Amendment, and/or

1    CC §51.7. [See ¶¶180 as Facts ¶¶ are identical];

2    **182.**   **FAILURE TO REVIEW:**

3         Defendants Celaya, Hughes, DOE1, DOE2, and Muniz,

4    failed to perform the requisite Use of Force Reviews fol-

5    lowing the infliction of serious bodily injury upon Plain-

6    tiff, and/or on receipt of Plaintiff's complaint, report

7    and allegation of the use of unnecessary force by certain

8    other Defendants, and they did so with deliberate indiffer-

9    ence, malice, and in conscious disregard for Plaintiff, in

10   violation of CCR §§3084.9(i)(5), and 3268-3268.1. [¶¶76,

11   78];

12   **183.**   **SUPERVISORY LIABILITY:**

13        Defendants Gutierrez, Perez, Celaya, Martinez, Hughes,

14   Muniz, McClellan, and Quintero, by and through their acts

15   and omissions were intentionally, maliciously, with deli-

16   berate indifference toward and conscious disregard for Plain-

17   tiff, derelict in their responsibilities for the care and

18   treatment of Plaintiff in violation of the U.S. Constitu-

19   tion's  Eighth and Fourteenth Amendments as the acts and/or

20   omissions of Defendants resulted in the continued infliction

21   of cruel and unusual punishment upon Plaintiff, and viola-

22   ted Plaintiff's right to due process and equal protection.

23   [¶76];

24   **184.**   **BATTERY AGAINST DEPENDENT ADULT:**

25        Defendants Gutierrez, J. Ramirez, Aboytes, Vasquez,

26   Caballero, and Velasquez committed battery against a depen-

1   dent adult in violation of PC §243.25, and U.S. Constitu-
2   tion's Eighth and Fourteenth Amendments, when they beat
3   Plaintiff on February 28, 2017, and did so maliciously and
4   sadistically, with wanton disregard for Plaintiff's health
5   and well-being, and in furtherance of no valid penological
6   interest, and with the sole intent to cause harm to Plain-
7   tiff.  Defendants inflicted on Plaintiff cruel and unusual
8   punishment as well as denied Plaintiff due process of law.
9   [¶¶57-59; Defendant Caballero, ¶101, additionally];

10      **185.**   DEPENDENT ADULT ENDANGERMENT:

11      Defendant Valles, by and through his act of removing
12   Plaintiff from the dining room without justifiable cause
13   and having Plaintiff placed in a holding cage in the gym
14   where he could be abused by other Defendants, and doing so
15   maliciously and with deliberate indifference, placed a de-
16   pendent adult, namely, Plaintiff, in a position of endanger-
17   ment in  violation of PC §368(b)(1).  Defendant violated
18   Plaintiff's due process rights under the U.S. Constitu-
19   tion's Fourteenth Amendment, and subjected Plaintiff to
20   the infliction of cruel and unusual punishment in viola-
21   tion of the U.S. Constitution's Eighth Amendment.  Defen-
22   dants Vasquez, J. Ramirez, Aboytes, Gutierrez, Gudino,
23   Velasquez, Ayala and Caballero, by and through their acts
24   and/or omissions, did so as well. [Defendant Valles--¶42;
25   all others--¶53];

26                              /

1    **186.**   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:

2         Defendants Gutierrez, Aboytes, J. Ramirez, Valles,

3    Caballero, Gudino, Vasquez, Ayala, Martinez, Velasquez,

4    Shaltry, by and through their individually and collectively

5    extreme and outrageous conduct, both during the February

6    28, 2017, incident and subsequent to the incident, inten-

7    tionally, maliciously, wantonly, and with conscious and reck-

8    less disregard for their actions and for Plaintiff, inflict-

9    ed upon and caused Plaintiff to experience severe and ex-

10   acerbated mental and emotional distress, both acute and

11   chronic;

12   **187.**   EQUAL PROTECTION:

13        Defendants Gutierrez, Perez, Celaya, Aboytes, Valles,

14   Caballero, Ramirez, Gudino,  Vasquez, Ayala, Martinez,

15   Poody, Velasquez, Shaltry, McClellan, Quintero, and Ramirez

16   denied Plaintiff's right to equal protection of the law,

17   pursuant to the U.S. Constitution's Fourteenth Amendment,

18   by and through their acts and omissions including, but not

19   limited to, beating Plaintiff, intimidating and attempting

20   to dissuade Plaintiff from giving information in an investi-

21   gation, locking Plaintiff in a cage for refusing to engage

22   in a volatile conversation, locking Plaintiff in a cage

23   upon Plaintiff's request for medical care, locking Plain-

24   tiff in a cage for debating in a non-threatening, non-

25   disruptive manner, failing to act on Plaintiff's report

26   of the use of unnecessary force, documentation of an un-

1    adjudicated accusation and charge and punishing Plaintiff
2    for the same, one of more of which have been perpetrated
3    against Plaintiff by one or more of the Defendants named
4    above;

5    **188.**    **BANE CIVIL RIGHTS ACT:**

6    Defendants Gutierrez, Perez, J. Ramirez, Celaya,
7    Aboytes, Caballero, Valles, Gudino, Vasquez, Ayala, Poody,
8    Martinez, Hughes, Muniz, Velasquez, Shaltry, McClellan,
9    Quintero, Ramirez by and through their individual and/or
10   collective acts and/or omissions, interfered with Plain-
11   tiffs exercise and enjoyment of his state and federal con-
12   stitutional rights, privileges and protections in violation
13   of CC §§52, 52.1, and they did so willfully, maliciously
14   with sadistic intent, with a wanton disregard for Plain-
15   tiff and/or their actions, and with deliberate indifference;

16   **189.**    **FAILURE TO NOTICE:**

17   Defendants Caballero, DOE3, and Shaltry, upon creating
18   and introducing into Plaintiff's prison file documents
19   containing disparaging remarks, doing so willfully, mali-
20   ciously, intentionally and with deliberate indifference,
21   failed in their duties to provide to Plaintiff copies of
22   the documents as mandated by CCR §3375(h), and such fail-
23   ure to notice Plaintiff on these documents deprived Plain-
24   tiff of his right under CCR §3375(h) to have such a copy,
25   and of Plaintiff's privilege of being able to determine
26   a prospective course of action to exercise his right to

1   to appeal or grieve the commentary contained within the

2   documents and/or the propriety of their inclusion within

3   Plaintiff's prison file and, in doing so, Defendant's vio-

4   lated those appeal rights of Plaintiff as contained in

5   CCR §3084.1, and Plaintiff's due process rights under the

6   U.S. Constitution's Fourteenth Amendment. [¶126];

7       **190.**   **PRISONER BRUTALITY;**

8       Defendants Gutierrez, J. Ramirez, Caballero, Aboytes,

9   Vasquez, Gudino, Valles, Velasquez, Martinez, Quintero,

10  Perez, Ayala, Celaya, Muniz, Shaltry, McClellan, Ramirez,

11  DOE1, DOE2, and DOE3, by and through their acts and omis-

12  sions, and with deliberate indifference, malicious and

13  sadistic intent, wanton, conscious and reckless disregard

14  for Plaintiff and/or their acts and omission, and for the

15  sole intent of injuring Plaintiff, and with no legitimate

16  penological interest, were willfully inhumane and oppress-

17  ive toward Plaintiff in violation of PC §147, and the U.S.

18  Constitution's Eighth Amendment with the infliction of

19  cruel and unusual punishment against Plaintiff by their

20  acts and omissions;

21      **191.**   **FALSE REPORTING OF CRIME:**

22      Defendants Gutierrez, J. Ramirez, Caballero, Ayala,

23  Aboytes, Vasquez, upon creating their individual CDCR-

24  837-C Crime/Incident Report, Part C-Staff Reports, and

25  submitting their reports to their supervisors, falsely

26  reported to a peace officer, as defined in California Penal

1   Part 2, Title 3, Ch. 4.5, that Plaintiff had committed
2   a felony or misdemeanor, knowing their reports to be false,
3   and knowing that the person to whom they submitted the
4   false reports was a peace officer engaged in the perfor-
5   mance of his duties as a peace officer, and they did so
6   willfully, maliciously, wantonly, and with deliberate in-
7   difference in violation of PC §148.5(b). Their acts vio-
8   late Plaintiff's due process, cruel and unusual, and per-
9   sonal security rights and protections under the U.S. Con-
10  stitution's Fourteenth, Eighth, and Fourth Amendments,
11  respectively: [¶74];

12      **192.   INTERFERENCE WITH CIVIL RIGHTS:**

13      Defendants Gutierrez, J. Ramirez, Caballero, Aboytes,
14  Vasquez and Velasquez, by use of force and/or the threat
15  of force against Plaintiff, willfully injured, intimidated,
16  interfered with, oppressed and/or threatened Plaintiff
17  while Plaintiff exercised rights and privileges guaranteed
18  him under the fredom of speech protections of the U.S.
19  Constitution's First Amendment, while Plaintiff enjoyed
20  his right to be free from harm under CC §43, and to have
21  personal security under the U.S Constitution's Fourth Amend-
22  ment, while Plaintiff enjoyed his right to freedom from
23  violence under the U.S. Constitution's Eighth Amendment
24  and California Constitution Article 1, §17 and CC §51.7,
25  while Plaintiff enjoyed his right to equal protection under
26  the U.S. Constitution's Fourteenth Amendment, while Plain-

1  tiff exercised and enjoyed the rights afforded him pur-
2  suant to CC §52, and preceding Plaintiff's expected poly-
3  graph examinition regarding staff abuse allegations against
4  Defendents, which information, testimony, and/or answers
5  would be in the exercise and enjoyment of Plaintiff's free
6  speech right under the U.S Constitution's First Amendment,
7  and Defendants did so, in part, because Plaintiff has a
8  disability pursuant to PC §422.56(b), of which such dis-
9  ability makes Plaintiff an easy target for abuse, and in
10  so doing Defendants, individually and collectively vio-
11  lated PC §422.55 and §422.6, and did so maliciously and
12  sadistically, with wanton disregared for and deliberate
13  indifference toward Plaintiff. [Facts ¶¶ are provided
14  respectively to the Defendants and ar separated by ";":
15  ¶¶57-59, 91, 108, 112, 114-116, 118; ¶¶57-59; ¶¶57-59,
16  89, 90, 96, 98, 100, 101, 118, 126; ¶¶57-59; ¶¶43, 44,
17  57-59; ¶42];

18  **193.**  Defendants' acts and/or omissions directly and
19  indirectly caused and/or contributed to the violations
20  against Plaintiff and to the injuries suffered by Plain-
21  tiff.

22  /
23  /
24  /
25  /
26  /

1 VI. PRAYER FOR RELIEF.

2     Plaintiff respectfully requests this Court take the
3 following actions, and grant the relief requested below.

4     A. That this Court assume supplemental jurisdiction
5 pursuant to 28 U.S.C. §1367 and, in doing so, decide all
6 of the claims including any based on California statutes,
7 cases, regulations, etc.;

8     B. Provide declaratory relief for statutory, consti-
9 tutional, and regulatory violations, including the follow-
10 ing Causes of Action: ¶¶159-164; ¶¶169-192, as well as
11 declarations that the Facts contained within ¶¶35, 36,
12 individually and/or collectively, are true;

13     C. Award compensatory damages against Defendants,
14 jointly and severally, in an amount deemed fair and just
15 by the Court for the infliction of physical and mental
16 harm;

17     D. Award punitive damages against Defendants, jointly
18 and severally, in an amount deemed fair and just by the
19 Court for the infliction of physical and mental harm;

20     E. Award both compensatory and punitive damages against
21 Defendants, jointly and severally, in an amount deemed fair
22 and just by the Court for the deprivation and violation
23 of Plaintiff's rights;

24     F. Pursuant to CC §52.1(a), and for having violated
25 CC §§52, 52.1, award damages, jointly and severally, in
26 the total amount of $475,000.00 against the Defendants in

1  ¶188, and at the statutory rate of $25,000.00 per Defen-

2  dant found to have violated Plaintiff's rights under the

3  Bane Civil Rights Act.  This award, pursuant to the statute,

4  is separate from and __in addition to__ any other relief grant-

5  ed;

6  G. All requests for damages are separate and distinct

7  from all others except to the extent that the mental/emo-

8  tional injury resulted from the physical injuries describ-

9  ed herein;

10  H. Grant any other such relief as this Court deems

11  appropriate for the totality of the situation.

12  /

13  /

14  I, Raymond Richard Whitall, declare under penalty of per-
   jury that I have read the foregoing complaint, and that
15  the foregoing is true and correct, except as to those mat-
   ters stated on information and/or belief, and as to those
16  matters I believe them to be true and correct.

17

Executed on March 27, 2018, at Soledad California.

18

19

20  Raymond Richard Whitall
    Plaintiff, pro se

21  /

22  /

23  /

24  /

25  /

26  /

First Amended Complaint
18-cv-1376-CRB                    77