# EXHIBIT 35

State of California                                                                                    Department of Corrections and Rehabilitation

# Memorandum

Date   :   July 13, 2017                                                                               CONFIDENTIAL

To     :   W. Muniz
           Warden
           Salinas Valley State Prison

Subject:   **ALLEGATION INQUIRY #123, INMATE WHITALL G43090, SALINAS VALLEY STATE PRISON - PRISON LAW OFFICE REPORT**

**SYNOPSIS:**

On Friday, July 13, 2017, at your request, I initiated an inquiry into an allegation of staff misconduct. This allegation was presented to Salinas Valley State Prison (SVSP) by a Prison Law Office (PLO) report dated March 2017. Specifically, according to the PLO report, allegation/event #123 states:

> "Person 97**, Z-9, reported that on February 28, 2017, while he was in A-5, he approached Officer 95 in the dining hall and requested to go to medical. Person 97 explained that he wanted to request a replacement finger brace because his had been confiscated the night before during a cell search. In response, Officer 95 handcuffed Person 97 behind his back (despite Person 97's use of a cane) and called for assistance. Officer 7 and Officer 97 responded. Officer 97 confiscated Person 97's cane, and all three officers escorted Person 97 in cuffs to the gym where he was placed in a cage and instructed by officer 97 to strip out. Person 97 began to strip out, throwing his mobility vest and clothing out of the cage portal, at which time Officer 97 reportedly stated, "If you hit me with anything I'm going to fuck you up." Person 97 was left in the cage in his underwear for about fifteen minutes, after which Officer 88 (a sergeant) entered the gym and asked Person 97 what had taken place. After speaking with Person 97, Officer 88 instructed Officer 97 to let Person 97 out and back to his cell.
>
> As Person 97, who suffers from Meniere's Disease and falls frequently, was getting dressed, he began to feel dizzy while reaching for his clothing and fell on the floor. According to Person 97, Officer 88 then told him to get up, and said: "I'm going to leave. I'll be back in two minutes. If you're not up, I'm going to give you a battery on a peace officer." Officer 88 left the gym and returned shortly after, while Person 97 was still experiencing dizziness and was unable to stand up.
>
> Person 97 reported that, at that point, he was surrounded by Officer 27, 97, 35, and 88 and felt someone punch him twice on the left side of his face around his temple. He rolled over onto his stomach, then was kneed twice on the right side of his face and punched again on the left side of his face. He heard an officer yelling, "Stop resisting," even though he was lying on the

Case 3:18-cv-01376-CRB   Document 183   Filed 07/07/23   Page 3 of 7



Allegation Review #123
Page 2 of 6

ground with cuffs behind his back. Person 97 reports that he then heard an officer reporting a battery on a peace officer on his radio.

Following the assault, Person 97 was put in wheelchair, brought to a gurney, and taken to the TTA in an ambulance. At the TTA, medical staff determined he needed to go to an outside hospital. While at the hospital, Person 97 received a CT scan which showed that he received a concussion as a result of the assault.

Person 97 filed a 602 on March 16, 2017, but did not include the officers' names for fear of retaliation. Person 97 says he received an RVR for battery on an officer, which states that he swung his cane at Officer 35 and hit him in the shoulder and hand. Person 97 denies the claim and says that he has osteoarthritis in both shoulders, which makes it hard for him to lift his arm to shoulder height.

- According to eUHR records, Person 97 went to an outside hospital on February 28, 2017 for a "head injury / concussion," "finger sprain," and "hypertension." Person 97's PCP noted on March 10, 2017 that Person 97 "sustained a head trauma" to the left side of his face and that, "[p]er patient, he was beaten by officers."
- Person 97's PCP indicated on March 10, 2017 that Person 97 has vertigo. Similarly, on March 16, 2017, Person 97's PCP noted that Person 97 has Meniere's Disease.
- A PCP note from October 23, 2016 documents that Person 97 experiences "bone deep pain on his bilateral arms." And an MRI of his right shoulder shows an "inferior osteophyte formation."

INVESTIGATION:
Upon reviewing the Confidential Key to Prisoner Names provided by the PLO, Person 97 was identified as Inmate Whitall G43090. I conducted a search via the Strategic Offender Management System (SOMS) by the California Department of Corrections and Rehabilitation (CDCR) number and I was able to determine Inmate Whitall G43090 has been housed at SVSP since March 29, 2016 (see attached).

Upon reviewing the Confidential Key to Officer and Staff Names provided by the PLO the officers are identified as follows:
Officer 7      Bonham
Officer 27     Gudino
Officer 35     Ramirez/J. Ramirez
Officer 88     Velasquez Sgt.
Officer 97     Vasquez

I conducted a review of the Fair Labor Standards Act (FLSA) Sign in Sheets for February 28, 2017 (see attached). The review revealed there wasn't a Sergeant Velasquez assigned to Facility A, a review of the Alpha Roster for Sergeants revealed there is no Sergeant Velasquez employed by SVSP (see attached).



**CONFIDENTIAL-ATTORNEYS' EYES ONLY**                                    **AGO 1884**

Allegation Review #123
Page 3 of 6

I conducted a review of the listing of Staff Complaints (see attached) against:
Correctional Officer (C/O) Bonham
C/O Gudino
C/O J. Ramirez
Sergeant Velasquez
C/O Vasquez.

Upon review of the Staff Complaint Listings for the staff indicated above, there is nothing that stands out for Officers Bonham and Gudino. However, the Staff Complaint Listing search conducted of Ramirez reflects a total of twenty staff complaints that either may or may not be against J. Ramirez. The staff complaints listing search is conducted my last name only. Therefore, the only way to determine the staff complaints against J. Ramirez is by reviewing each individual staff complaint. The Staff Complaint Listing for Vasquez has a total of twenty six Staff Complaints and once again the exact number against F. Vasquez can only be determined by reviewing each individual complaint.

I conducted a review of IR #SVSP-FAY-17-02-0140 (see attached) for Battery on a Peace Officer Resulting in Use of Physical Force. There were several levels of review conducted:
- The initial informal level, where the Response Supervisor reviewed all CDCR 837 Part Cs. Upon completion of all CDCR 837
- Incident Commander's Review/Critique Use of Force Incidents
- Manager's Review-First Level Use of Force Incidents
- Manager's Review-Second Level Use of Force Incidents
- Institution Executive Review Committee

Upon completion of each review it was determined staff were in compliance with departmental policy. The CDCR 837 A1 gives a synopsis that paints a clear picture that necessitated the use of force. It states in part, *"Whitall was being released from Holding Cell #4 when he swung his cane, striking Correctional Officer J. Ramirez on his right hand. A Code 1 Battery on Staff was announced via institutional radio. Physical Force was used by Correctional Officers J. Ramirez, J. Aboytes and J. Caballero to stop the attack on staff subdue the attacker..."* Based on the aforementioned staff's actions appear to be in compliance with policy. A further review identified the injuries sustained by Whitall, these injuries appear to be inconsistent with the use of force. This reviewer also noted the CDCR 837 Part C authored by H. Ayala states, *"Sgt. Gutierrez instructed Officer Vasquez to remove Whitall's clothes so that Medical staff could perform a Medical Evaluation".* It is unclear as to why Sgt. Gutierrez made this request as it's not indicated if it was due to health care staff's request.

I conducted a review of the CDCR 7219 Medical Report of Injury or Unusual Occurrence generated during the evaluation of C/O J. Ramirez. The CDCR 7219 indicates there was a pain and reddened area to the right hand. The pain and



Allegation Review #123
Page 4 of 6

redness to Ramirez' right shoulder is evidence that Ramirez was struck in some manner by Whitall.

I conducted a review of the Appeal Listing Report (see attached) for Whitall. Whitall has submitted eleven appeals during the time he has been housed at SVSP. Appeal Log #SVSP-L-17-02885 (see attached) which was accepted as a Staff Complaint appears to be related to this issue. A thorough inquiry was conducted by Sergeant E. Perez to include staff interviews. A discrepancy was identified, Sergeant Perez stated in the Confidential Supplemental to Appeal, *"I also reviewed the 7219 that was completed on the day he claims he was assaulted. No injuries were documented by medical staff to corroborate the appellant's claim."* There were two CDCR 7219s generated on February 28, 2017. One CDCR 7219 was completed at 0825 and the other at 0840 hours. The CDCR 7219 completed at 0840 hours indicates Whitall sustained bruise/discolored area, cut/laceration/slash, reddened area and swollen area to the right temple. There was also bruise/discolored area above the left eye brow (outer) and bruise/discolored area, reddened area, and swollen area above the left eye brow (inner). Upon completion of the inquiry it was determined staff did not violate policy. However, this reviewer finds the injuries do not appear to be consistent with the use of force reported.

The appeal was also forwarded the California State Prison, Los Angeles County (LAC) for a videotape interview due to the appeal issue being "staff complaint battery". The allegation went through the established CDCR 3014 Report of Finding-Inmate Interview (see attached) process. The CDCR 3014 reflects, Whitall is not aware who struck him. Whitall indicated he felt someone punch him on the left side of the face at least twice and on the right side with a knee. The injuries documented on the CDCR 7219 appear to be inconsistent with the force reported by staff. Although it is possible the injury to the forehead might have been sustained when Whitall fell to the ground when attempting to get dressed, the other injuries to the left and right temple are undetermined.

I conducted a review of Rules Violation Report (RVR) #2387228 for the specific act of "Battery on a Peace Officer" a division "B" offense. The RVR was adjudicated on May 11, 2017, Whitall entered a plea of "not guilty" and the Senior Hearing Officer (SHO) found Whitall "guilty" based on preponderance of evidence. There were no due process violations and all time constraints were met. The Chief Disciplinary Officer conducted his review and reaffirmed the SHO's findings.

On Monday, July 18, 2017, I introduced myself to Inmate Whitall G43090/A5-119L and informed to him I was conducting an inquiry into an allegation of staff misconduct he presented to the PLO during the March 2017 tour. I gave Whitall a brief synopsis of the allegation and he recalled making the allegation. I told Whitall I needed clarification on the incident and he agreed to speak to me. The interview was conducted in the Facility A Program Office. I told Whitall I reviewed the videotape, incident report, and the PLO allegation. I informed him I was unable to identify a Sergeant Velasquez. Whitall looked at the door, pointed and said, *"look at the door it*

**CONFIDENTIAL-ATTORNEYS' EYES ONLY**                                                        AGO 1886

Allegation Review #123
Page 5 of 6

says Velasquez. There was a Sergeant Velasquez here that day, I might have the names wrong. I was trying to pay attention to all the names but I could be wrong." I told Whitall I printed the sign in sheets for that day and there was no one on the sign in sheet with the name of Velasquez. At this time I gave Whitall the names of the sergeants that were on duty the day of the incident. It wasn't until this time that Whitall said, "Then it had to have been Gutierrez because he is on the paperwork as giving direction. So if it wasn't a Sergeant Velasquez the only other person it could have been was Gutierrez."

I asked Whitall, "In the videotape interview you don't identify the staff that battered you, and in the appeal you identify Ramirez, how did you determine it was him?"

"He was there, and even though I didn't see who was hitting me it was him and the other staff that were there."

I asked Whitall, "Would you be willing to submit to a Computer Voice Stress Analysis?"

"Is that like a polygraph? Sure I will do that."

I thanked Whitall for his participation and concluded the interview.

During the interview, this writer spoke slowly, used simple English and constantly monitored the inmate's demeanor to ensure effective communication was attained. Based on the inmate's response and the interaction, this writer was able to ascertain effective communication was in fact achieved.

CONCLUSION:
Although it was determined this allegation has been addressed through the established procedures, this reviewer finds there are inconsistencies that were not identified through these channels. There is a reason to believe the injuries sustained are not consistent with the force reported by staff. Although Whitall indicated he fell, that would only explain the injury to the forehead. There were additional injuries that were unclear as to the manner sustained. It is also unclear as to why Whitall was escorted to the gym holding cell in handcuffs.

The CDCR 7219 generated at 0820 also creates some doubt. The reports do not close the gap or explain why the CDCR 7219 was necessary, what lead to the placement of Whitall into the holding cell. Whitall indicated he was out of the holding cell attempting to get dressed and staff indicated he was in the holding cell. A spontaneous statement made to this reviewer by staff on Facility A gives Whitall's statement credibility. This reviewer finds reason to believe that Whitall was in fact out of the holding cell getting dressed. Although this reviewer does not doubt Whitall struck J. Ramirez with his cane, it is not a clear as to what transpired prior to that. Whitall remained consistent during the videotape interview, the PLO allegation and

**CONFIDENTIAL-ATTORNEYS' EYES ONLY**                              AGO 1887



Allegation Review #123
Page 6 of 6

the interview with this reviewer enough to create doubt as to the manner in which the use of force was applied and also what lead up to it.

The following staff were identified as having been involved/witnessed the incident in question.

Sgt. S. D. Gutierrez
C/O B. Bonham
C/O M. Gudino
C/O J. Ramirez
C/O F. Vasquez.

Based on the aforementioned, it is my recommendation this allegation be referred to the Office of Internal Affairs for further inquiry. In addition, it is also my recommendation a Computer Voice Stress Analysis of Whitall be conducted. Should you have further questions regarding this matter please contact me at extension 7100.

M. C. MIRELES
Correctional Lieutenant
Resource Team

Attachments:

SOMS Bed Assignments
Fair Labor Standards Act (FLSA) Sign in Sheets February 28, 2017.
Alpha Roster Sergeants
Staff Complaint Listing/Bonham/Gudino/Ramirez/Velasquez/Vasquez
Appeal Log #SVSP-L-17-02—140
Appeal Listing Report Whitall
CDCR 3013/3014 Report of Findings-Inmate Interview



**CONFIDENTIAL-ATTORNEYS' EYES ONLY**　　　　　　　　　　**AGO 1888**